**Ex parte WELLS.**

No. 29448.

United States District Court
N. D. California, S. D.

March 30, 1950.

C. K. Curtright, Philip C. Wilkins, Sacramento, Cal., and Charles R. Garry, San Francisco, Cal., attorneys for petitioner.

Fred N. Howser, Attorney General of the State of California, and Clarence Linn, Deputy Attorney General, attorneys for the State of California.

GOODMAN, District Judge.

On January 27, 1950, Wesley Robert Wells filed in this Court a petition for the writ of habeas corpus. He alleged that he was to be put to death, the next day, by the Warden of the California State Penitentiary at San Quentin, Northern District of California, pursuant to a judgment and commitment of the Superior Court of the State of California in and for the County of Sacramento of date March 3, 1949. Further he alleged circumstances which, prima facie, indicated that his life was to be taken by the State of California without due process of law contrary to the prohibition of the 14th Amendment of the United States Constitution. Not having sufficient time to consider the merits of the important issue tendered by the petition, by authority of 28 U.S.C.A. § 2251, I granted a stay of execution. Thereupon an order was directed to the Warden requiring him to show cause why the relief prayed for in the petition should not be granted. The Warden filed a return in which he set up the Court's commitment, above referred to, as his authority for executing petitioner. The State of California filed a response to the petition in which was set out a detailed history of the many penal judgments and commitments against petitioner over a long period of time. The State also moved to dismiss the petition. On the return day, counsel for petitioner and the State's Attorney General argued the issues raised. Briefs were later filed, and now the Court, having considered the cause, makes its decision.

The undisputed and stipulated record discloses the following:

Since 1925, petitioner has served terms in California prisons for larceny, larceny of

an automobile, receiving stolen property, killing of an inmate while in prison, violation of § 503 of the California Vehicle Code, with two prior convictions; and on September 26, 1944 for violation of § 4502, California Penal Code (which makes possession of a deadly weapon while an inmate of prison a felony). Imprisonment for the last named offense was for a minimum term of five years. California law provides that the *maximum* for such offense is life imprisonment or such lesser maximum term as may be fixed by the Adult Authority of the State. 1168, 4502, 2940, Penal Code.

On April 10, 1947, 2½ years after the commitment of 1944, the Adult Authority had not yet fixed petitioner's term. On that day he assaulted a guard, one Noble Brown, and was thereafter convicted of violating § 4500 of the Penal Code and sentenced to be executed. Section 4500 provides that a person "undergoing a life sentence" who, with malice aforethought, assaults the person of another with a deadly weapon or instrument, or by any means of force likely to produce great bodily injury, is punishable with death.

The conviction was appealed to the Supreme Court of California. Upon the appeal, among other grounds, the unconstitutionality of § 4500 was urged. The Supreme Court of California (by a divided court, 3 judges dissenting) affirmed the conviction. People v. Wells, 33 Cal.2d 330, 202 P.2d 53. Petition for rehearing was denied. Certiorari was denied by the United States Supreme Court, 338 U.S. 836, 70 S.Ct. 43, 94 L.Ed. ——.[1]

The California Supreme Court held that § 4500 was not constitutionally infirm. It reaffirmed its holding in People v. McNabb, 3 Cal.2d 441, 45 P.2d 334 that § 4500 applied to persons committed for a fixed minimum and indeterminate maximum term. It held that until the precise maximum term of such persons was fixed by the Adult Au-

thority, they were "undergoing a life sentence."

The order which the Court will make herein does not require a consideration of the question of the constitutionality of § 4500. It is only necessary to consider, for the reasons to follow, whether the petitioner was accorded "due process" in the sense that he was in fact "undergoing a life sentence," on April 10, 1947.

It appears from the record that there is no doubt that during his incarceration in California prisons and particularly during the period from 1944 to April 1947, petitioner was an incorrigible, unruly and violent person, having committed innumerable infractions of prison rules. He refused to obey orders and struck and blasphemed prisoners and guards. It is clear that he has been and apparently still is, in every sense of the word, a bad and dangerous man.

But whether he is lawfully to be deprived of his life is not to be determined by his general character, for that is indeed too reminiscent of the policy of "liquidation" of present and past dictatorships. But rather should it be an impartial judgment as to whether, *in fact,* when he committed the assault of April 10, 1947, he was "undergoing a life sentence."

It is undisputed in the record that in November of 1944, the Adult Authority (the California administrative body entrusted with the function of fixing actual terms of sentences and granting or denying paroles) began the gathering of data for the purpose of determining, sometime in February of 1945, whether petitioner should be paroled, and, necessarily in that connection, the exact term of sentence. It addressed a letter on the subject to the District Attorney of Sacramento County, who had prosecuted the case against the petitioner. The District Attorney's reply dated December 15, 1944, is as follows:

---

1. It is well known in this day that denial of certiorari is not a determination on the merits. Certiorari may be denied for a considerable number of reasons, entirely unrelated to the merits. Rule 38, par. 5, Rules of the Supreme Court, 28 U.S. C.A. See opinion of Mr. Justice Frankfurter in State of Maryland v. Baltimore Radio Show, 1950, 338 U.S. 912, 70 S.Ct. 252.

"December 15, 1944

Adult Authority
Department of Corrections of
  the State of California
State Prison
Folsom

      In re: Wesley Robert Wells
          24155–A

Gentlemen:

I have your letter of November 30, 1944, in which you advise that the above named is scheduled to appear before your body during February, 1945, for parole consideration.

The offense for which this defendant was convicted arose at Folsom Prison. You are therefore entirely conversant with all the facts. You should also be conversant with the character and dangerous potentialities of Wells.

It is our recommendation and our suggestion that your Authority not fix a definite term in this case. As long as you fail to do so, his maximum sentence will remain at life, and he will be subject to prosecution under the statute which makes it a capital offense for a life-term prisoner to commit an assault. I think there can be no question but that this man will eventually take the life of a fellow being, if his life is not taken first. He is the type of man who should never be released from prison under any circumstances.

      Yours very truly
      John Q. Brown, District Attorney
      By Albert H. Mundt
      Chief Deputy District Attorney"

When the Adult Authority met in February or April of 1945, it took no action in petitioner's case. Nor did it do so at any time, in the sense of fixing the term of his sentence, up to April 10, 1947. The recommendation of the District Attorney was therefore followed. At any rate, what he recommended was the policy followed by the Adult Authority.

The pertinent question is whether these circumstances tainted the judgment of death with a lack of the "due process" commanded by the 14th Amendment. What is "due process"? Much has been written on the subject.

In 1884, Mr. Justice Matthews stated,[2] in the famous case of Hurtado v. California, 110 U.S. 516, 4 S.Ct. 111, 292, 28 L.Ed. 232, with reference to the rules established in our system of jurisprudence for the security of private rights that "if any of these (general rules) are disregarded in the proceedings by which a person is condemned to the loss of life, liberty, or property, then the deprivation has not been by 'due process of law.'" Mr. Justice Field, in Hagar v. Reclamation District No. 108, 111 U.S. 701, 4 S.Ct. 663, 667, 28 L.Ed. 569, decided the same year and shortly after the Hurtado decision, stated "there can be no proceeding against life, liberty, or property which may result in the deprivation of either, without the observance of those general rules established in our system of jurisprudence for the security of private rights." In 1941, Mr. Justice Murphy stated in Young v. United States, 315 U.S. 257, at page 259, 62 S.Ct. 510, at page 511, 86 L.Ed. 832: "The public interest that a result be reached which promotes a well-ordered society is foremost in every criminal proceeding. That interest is entrusted to our consideration and protection as well as that of the enforcing officers." More recently, in Solesbee v. Balkcom, 1950, 339 U.S. 9, 70 S.Ct. 457, 461, Mr. Justice Frankfurter said: "Due Process is that which comports with the deepest notions of what is fair and right and just. The more fundamental the beliefs are the less likely they are to be explicitly stated. * * * In applying such a large, untechnical concept as 'due process,' the Court enforces those permanent and pervasive feelings of our society as to which there is compelling evidence of the kind relevant to judgments on social institutions." I believe that what I said in United States v. Masaaki Kuwabara, D.C., 56 F.Supp. 716, at page 719 is here appropriate to-wit: "[The issue] must be resolved in the light of the traditional and historic Anglo-American approach to the time-honored doctrine of 'due process'. It must not give way to overzealousness in an

---

attempt to reach, via the criminal process, those whom we may regard as undesirable citizens."

Viewed in this setting, the Court must conclude that in the true and historic sense the petitioner was not accorded due process when the death penalty was adjudged against him. By deliberate and designed inactivity, the administrative body known as the Adult Authority of California kept the petitioner in an indefinite and indeterminate status for the purpose of making it possible to impose the death penalty upon him in the event that he committed an offense under § 4500 of the California Penal Code. It must be concluded that this is not the kind of process that comports with "the deepest notions of what is fair and right and just." It may be appropriately characterized as "overzealousness in an attempt to reach, through the criminal process (and indeed to destroy) those whom we may regard as undesirable citizens."

The sentence petitioner was "undergoing" on April 10, 1947 was not in any true or traditional sense a "life sentence." No Court or judicial officer adjudged that he should be imprisoned for life. His status at the time was wholly and strictly indeterminate. His term of imprisonment was for life only in the sense that it could be for life if a non-judicial administrative body at some time so decreed. Or it could be for life if the administrative body forever remained silent.

■ The Court's conclusion is that the petitioner was not accorded due process in that on April 10, 1947, he was not "undergoing a life sentence," justifying the imposition of the death penalty pursuant to § 4500 of the California Penal Code. Hence the State Court lacked jurisdiction to impose its judgment of death.

Despite what has been said as to the lack of due process accorded petitioner, the serious question remains as to whether this Court, under the circumstances, is authorized, via this habeas corpus proceeding, to

finally declare the State judgment imposing the death penalty upon the petitioner to be void because of the absence of the jurisdictional pre-requisite of due process. 28 U.S.C.A. § 2254 provides "an application for the writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of a prisoner. An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented." See Ex parte Hawk, 321 U.S. 114, 64 S.Ct. 448, 88 L.Ed. 572; Wade v. Mayo, 334 U.S. 672, 68 S.Ct. 1270, 92 L.Ed. 1647.

Among other errors asserted by the petitioner in the Supreme Court of California, upon appeal from the judgment against him, the unconstitutionality of § 4500 of the California Penal Code was urged. In affirming the judgment and sentence of death, the Supreme Court of California did not directly pass upon the precise jurisdictional question here raised, namely, the lack of due process inherent in the proceeding resulting in the imposition of the death penalty.

■ The petitioner still has the right, under the law of the State of California, to raise, by habeas corpus procedure, the question presented to this Court. That remedy is still available to him. There is no absence of available state corrective process for that purpose.[3] California, unlike some other states, has not closed the door against such procedure.[4]

In disposing of this matter this Court is not limited to the issuance of a final order granting or denying the writ. It may "dis-

---

3. Petitioner's argument that he believes the State remedy to be useless and unavailing is without merit. A ruling may not be complained of until it is made.

4. See Marino v. Ragen, 332 U.S. 561, 68 S.Ct. 240, 92 L.Ed. 170; Young v. Ragen, 337 U.S. 235, 69 S.Ct. 1073, 93 L.Ed. 1333; 48 Mich.Law Rev. 369.

pose of the matter as law and justice require." 28 U.S.C.A. § 2243. What I have said as to the lack of due process inherent in the State Court proceeding is not obiter dictum. It is the basis of the order which I believe "law and justice require."

The Court will retain jurisdiction of this cause.[5] It will reserve final ruling both on the merits of the petition and upon the motion of the State of California to dismiss the petition.

Execution of the judgment imposing the death penalty will be stayed for a period of ninety (90) days from date, in order to enable petitioner to pursue his state remedies by petition for a writ of habeas corpus or other corrective process.

Counsel will prepare a proper Order.

---

5. The practice of retaining jurisdiction of the cause while relief is sought in the State courts has been approved by the Supreme Court. Shipman v. Du Pre, 1950, 339 U.S. 321, 70 S.Ct. 640. See also Lee Fong Fook v. Wixon, 9 Cir., 1948, 170 F.2d 245.