STATE v. BRAASCH et al.

No. 7504.    Decided March 24, 1951.    (229 P. 2d 289.)

Rehearing denied June 19, 1951.

See 24 C. J. S. Criminal Law, Sec. 1889. Confession in criminal case, jury question as to voluntariness of, see note 170 A. L. R. 567. See, also, 53 Am. Jur. 237.

*John H. Snow,* Salt Lake City, for Verne Alfred Braasch.

*Orville Isom,* Cedar City, *Patrick H. Fenton, Avron Sandack,* and *Ned Warnock,* all of Salt Lake City, for Melvin LeRoy Sullivan.

*Clinton D. Vernon,* Atty. Gen., *Sam Cline,* Milford, *Quentin, L. R. Alston, and Bryce E. Roe,* Salt Lake City, for respondent.

WADE, Justice.

Defendants, Verne Alfred Braasch and Melvin LeRoy Sullivan were convicted of first-degree murder of Howard Manzione, a Standard Oil Service station attendant, at Beaver City, Utah, on October 22, 1949, and were sentenced to pay the death penalty. At the time of the killing Braasch was 24 years of age and Sullivan 19. By this appeal, they question the validity of their convictions because the State failed to furnish them with counsel until after they were arraigned in the district court. They also claim prejudicial error in the court's instructions.

The day after the killing defendants were arrested in Las Vegas, Nevada, where each made both oral and written confessions without the aid or advice of counsel. On October 25th they were taken before a committing magistrate at Beaver City and a preliminary hearing was held with their assent without being represented by an attorney. Thereafter on the same day they re-enacted the shooting at the service station and prior to the trial each made additional statements, some of them after they had consulted counsel.

The record discloses that about midnight between the 21st and 22nd, they went by bus from Cedar City to Beaver, Utah, which is about 53 miles north on U. S. Highway 91, where, on account of the open deer hunting season, restaurants and gasoline stations were open all night. Defendants first had coffee at the Do-Drop-Inn then went to the Standard Oil Company's service station about a block and a half away, remaining there about a half hour while the station attendant was busy, then they returned to the Do-Drop-Inn for more coffee. They were next seen between 7:15 and 7:45 the morning of October 22nd a few miles south of Beaver on Highway 91 where they tried to thumb a ride from a deer hunter and soon thereafter they flagged a Greyhound bus which they took to Cedar City. About 4:00 that morning, Howard Manzione the Standard Oil station attendant was found by two

Marines lying on the station floor mortally wounded and unconscious from four 22 calibre bullets. He was rushed to the Iron County Hospital at Cedar City where he died about 7:30 A.M. During that morning two 22 calibre pistols were found near Beaver River where it crosses Highway 91 south of Beaver City.

About 1:00 A.M. of October 23rd, defendants left Cedar City by bus for Las Vegas, Nevada, arriving about 4:30 A.M. They were arrested there and Sullivan confessed to the Beaver shooting. Thereupon Sheriff Jasper Puffer, of Beaver County, was notified and with highway patrolman Earnest C. Pearce and James B. Scott, special investigator for the Standard Oil Company, he drove to Las Vegas arriving there about 6:30 or 7:00 P.M. There, two local police officers brought Sullivan in and in the presence of these five officers informed him that if he wished to, of his own free will, he could make a statement of the Beaver City killing but that he did not have to, and that before he made any statement he was entitled to consult an attorney, but that any statement which he made might be used against him in court. Sullivan said he was ready to talk, and under the questioning of one of the local officers he made his statement which was taken and transcribed by a stenographer. This transcript was handed to Sullivan and he appeared to read each page thereof slowly and carefully. When he had finished he said it was correct and there were no changes or deletions he wished to make and after being reminded that he did not have to sign it, he signed each page thereof and then acknowledged to a notary public that it was true and made of his own free will.

Thereupon, Sullivan was taken away and Braasch brought in. One of the local officers informed him that Sullivan had confessed the Beaver City killing, that he did not have to make any statement but could if he chose to do so of his own free will; that he had the right to

consult an attorney before talking and that any statement he made might be used against him in court. Braasch first asked for an attorney. Then, according to the sheriff and investigator Scott, he waited five or ten minutes, in which nothing further was said and then Braasch said: "I am ready to give my side of the story." Patrolman Pearce added to the above version of this event that when Braasch requested an attorney he was told that when he got in the district court an attorney could be appointed for him, but before that, if he wished such advice, he would have to pay for it. The record is silent as to his ability to pay. Braasch thereupon said he was ready to talk and the proceedings went the same with him as with Sullivan until he had signed and acknowledged his confession.

On October 25th, the defendants were taken before a Justice of the Peace at Beaver City, where they were furnished a copy of the complaint. They were without legal counsel or the advice of relatives or friends. There the complaint was read, they were informed that they were entitled to a speedy trial, to be represented by counsel at every stage of the proceedings, and that they could have their preliminary hearing then or could ask for a postponement to procure a lawyer. Whereupon Braasch asked if they could "have an attorney at this time and at the trial?" The district attorney then explained that "the justice of the peace does not have the right to appoint counsel at a preliminary hearing but if he binds you over to the district court it will appoint counsel for you, but you have the right to employ counsel for yourself for this hearing." He further explained that the preliminary hearing is not a trial but merely to determine whether probable cause exists to hold the defendant whereupon each defendant consented to holding the preliminary hearing then.

The state then put on its case, including the confessions and supporting testimony and rested. When the magis-

trate informed the defendants that they could make an unsworn statement but did not have to, Braasch said: "At this time I would like to have an attorney." On being informed that they could have an attorney in the district court each defendant said they had nothing more to say, and were bound over to the district court. On October 29th, the information was filed in the district court and defendants were brought in for arraignment where they were informed of their rights, pleaded "not guilty" and separate counsel was appointed for each of them. Thereafter defendants were granted a change of the place of trial and the trial was commenced December 15th.

On the trial the state offered the confessions, the court excluded the jury and took evidence and therefrom concluded that they were voluntary and admissible. The same evidence was submitted to the jury with the instruction that if the jury found that the confessions were "procured through coercion, threats, duress or any promise of immunity or benefit," they should be disregarded entirely. Such instruction is contrary to our holding in *State* v. *Crank,* 105 Utah 332, 142 P. 2d 178, 170 A. L. R. 542 (concurring opinion at 371 to 375, Utah Reports and 195 to 197 Pacific Reporter, agreed to by a majority of the court). There we held that a confession should not be admitted until the court was convinced that it was made voluntarily which usually should be determined in the absence of the jury; that if the court decided it was admissible the jury should not be required to determine that question again but should hear all the evidence on whether it was made voluntarily and other evidence affecting its credibility with instructions to give the confession such weight as they concluded it was entitled to but not allow them to pass on its admissibility. The procedure which the court adopted was more favorable to defendants than the correct procedure and they claim no error or prejudice in this respect.

By their confessions the defendants each stated that they went to Beaver to commit robbery; that they went to the Standard Oil Company's station armed wih 22 calibre pistols for that purpose and, pursuant to their plans, Braasch attempted to strike the attendant from behind over the head with his cocked pistol, when the attendant grabbed Braasch who shot him through the back, and struggling they went to the floor together. Thereupon Sullivan shot the attendant high in the arm and when he released his grip, Braasch arose and as they fled without taking the money, each shot the attendant through the head as he lay on the floor. They stated that they went south on highway 91 and as they crossed the Beaver River they threw their guns over the side of the bridge; and later they flagged a Greyhound bus traveling south and took it to Cedar City, where they remained until early the next morning when they took a bus to Las Vegas.

Defendants contend that in view of their immature years, and lack of appreciation of the results thereof, these confessions given without the advice of counsel, relatives or friends were coerced and involuntary. By the use of such confessions, either as evidence or in obtaining other evidence against them, the chance of an immature person to avoid conviction is much less than that of a person hardened in crime and experience in the effect of such evidence who, without the advice of counsel, would refuse to talk. It seems probable that Sullivan made his confession without being suspected of this crime for the record shows nothing to indicate that they were arrested for this offense, and Sullivan in his confession says that he wanted to give himself up at Cedar City when he read in the papers that the station attendant had died but Braasch held him back.

Had Sullivan kept his secret these boys may never have been suspected of this crime. For it occurred while Beaver was full of strangers, there for deer hunting so their pres-

ence there at that time would not arouse suspicion. But with the confessions to focus the attention of the investigating officers on them, the resulting evidence was probably sufficient to convict without using the confessions and with the confessions the case against them is so strong that there can be little possible doubt of their guilt. Had they consulted counsel before answering any questions maybe they would not have confessed for, as stated by Mr. Justice JACKSON in *Watts v. State of Indiana,* 338 U. S. 49, 69 S. Ct. 1347, at pages 1357, 1358, 93 L. Ed. 1801, "any lawyer worth his salt will tell the suspect in no uncertain terms to make no statement to police under any circumstances." That they received no such advice seems to be the only grounds for their present complaint.

Though, even questioning a suspect, gives the hardened criminal a much greater chance to escape justice than is afforded an immature person, the use of such confessions is a great aid in ferreting out the truth, a prime purpose in all rules of procedure. Many cases have held that the fact that the confessor was inexperienced, without the advice of counsel, relatives or friends when not informed of or given the right to counsel, along with the fact that there were threats, promises, misrepresentations, long periods of relentless questioning, denial of sleep and rest and the rudimentary needs of life or other circumstances calculated to break the prisoner's will to resist are sufficient to establish that such confession was not voluntarily made. *Chambers* v. *State of Florida,* 309 U. S. 227, 60 S. Ct. 472, 84 L. Ed. 716; *Ashcraft* v. *State of Tennessee,* 322 U. S. 143, 64 S. Ct. 921, 88 L. Ed. 1192; *Watts* v. *State of Indiana,* supra; *Turner* v. *State of Pennsylvania,* 338 U. S. 62, 69 S. Ct. 1352, 1357, 93 L. Ed. 1810. "But 'the mere questioning of a suspect while in the custody of police officers is not prohibited

either as a matter of common law or due process,[1] and the mere fact that a confession is made while the accused is in the custody of the police officers does not render it inadmissible."[2]  See *Federal Restrictions on State Criminal Procedure by Bennett Roskey* and *John H. Pickering,* 13 University of Chicago Law Review, 266, 294.

In the recent cases of *State* v. *Mares,* 113 Utah 225, 192 P. 2d 861, and *Mares* v. *Hill,* 118 Utah, 484, 222 P. 2d 811, we held that a similar confession was voluntary and its admission in evidence was not error nor lack of due process. Here as in that case there was no evidence of relentless questioning, physical discomfort, threats, misrepresentations or promises made to the accused to induce the confession, and each defendant was fully informed of his rights.  The only difference in the two cases is that Mares said he did not want an attorney or his folks to know whereas here, Braasch first asked for an attorney and when it was explained that he would have to pay for such service he waited five or ten minutes and then said he was ready to talk.  These circumstances do not show coercion.

Closely related to defendants' claim that their confessions were coerced is their argument that they were denied counsel.  Constitution of Utah, Article 1, Section 12, provides that, "*  *  *  the accused shall have the right to appear and defend *  *  * by counsel." Federal Constitution, Sixth Amendment, provides that, "*  *  *  *  the accused shall enjoy the right  *  *  *  to have the Assist-

---

[1] *Lyons* v. *Oklahoma,* 1944, 322 U. S. 596, 601, 64 S. Ct. 1208, 88 L. Ed. 1481, citing *Lisenba* v. *California,* 1941, 314 U. S. 219, 239, 241, 62 S. Ct. 280, 86 L. Ed. 166; *Ziang Sung Wan* v. *United States,* 1924, 266 U. S. 1, 14, 45 S. Ct. 1, 69 L. Ed. 131.

[2] *United States* v. *Mitchell,* 1944, 322 U. S. 65, 64 S. Ct. 896, 88 L. Ed. 1140; *McNabb* v. *United States,* 1943, 318 U. S. 322, 63 S. Ct. 608, 87 L. Ed. 819.

ance of Counsel for his defense." Under Section 105—15 —1, U. C. A. 1943, when a defendant is brought before a magistrate "the magistrate must immediately inform him * * * of his right to the aid of counsel in every stage of the proceedings"; under Section 105—15—2, the magistrate must postpone the examination where necessary to allow the defendant a reasonable time to send for counsel and send a message to any attorney in the precinct or city that defendant may name, and under Section 105—22—12, U. C. A. 1943, if the defendant appears for arraignment in the district court without counsel and "desires, but is unable to employ counsel, the court must assign counsel to defend him."

Defendants argue that under the above statutory and constitutional provisions they were entitled to the aid of counsel at every stage of the proceedings. And that *Powell v. State of Alabama,* 287 U. S. 45, 53 S. Ct. 55, 64, 77 L. Ed. 158, holds to constitute due process of law in his trial the defendant "requires the guiding hand of counsel at every step in the proceedings against him," unless he intelligently and understandingly waives counsel. See *Johnson* v. *Zerbst,* 304 U. S. 458, 58 S. Ct. 1019, 82 L. Ed. 1461, 146 L. R. A. 357, and note at 369; *People* v. *Williams,* 399 Ill. 452, 78 N. E. 2d 512, 3 L. R. A. 2d 999, note at 1004; *Avery* v. *State of Alabama,* 308 U. S. 444, 60 S. Ct. 321, 84 L. Ed. 455; *Smith* v. *O'Grady,* 312 U. S. 329, 61 S. Ct. 572, 85 L. Ed. 859; *Betts* v. *Brady,* 316 U. S. 455, 62 S. Ct. 1252, 86 L. Ed. 1595; *Ex parte Hawk,* 321 U. S. 114, 64 S. Ct. 448, 88 L. Ed. 572; *Hawk* v. *Olson,* 326 U. S. 271, 66 S. Ct. 116, 90 L. Ed. 61; *Williams* v. *Kaiser,* 323 U. S. 471, 65 S. Ct. 363, 89 L. Ed. 398; *Tompkins* v. *Missouri,* 323 U. S. 485, 65 S. Ct. 370, 89 L. Ed. 407; *Mackey* v. *Kaiser,* 323 U. S. 683, 65 S. Ct. 558, 89 L. Ed. 554; *House* v. *Mayo,* 324 U. S. 42, 65 S. Ct. 517, 89 L. Ed. 739; *White* v. *Ragen,* 324 U. S. 760, 65 S. Ct. 978, 89 L. Ed. 1348; *Rice* v. *Olson,* 324 U. S. 786, 65 S. Ct. 989, 89

L. Ed. 637. These cases deal with the right of counsel at the trial not with the right to consult counsel before a defendant may be questioned by police officers. We have found no case which holds that a confession is not admissible in evidence merely because the defendant was immature and without the advice of counsel, friends or relatives when it was made and *Mares* v. *Hill,* supra, considered this very problem and held that those facts did not make the confession inadmissible in evidence.

Defendants claim that they were also deprived of the aid of counsel at the preliminary hearing. The district attorney's explanation to the defendants of their right to the aid of counsel suggests that they were entitled to an attorney at that hearing only if they could procure such services without the aid of the state. In *State* v. *Crank,* 105 Utah 332, 142 P. 2d 178, 170 A. L. R. 542, we pointed out that, although there was no express statutory provision requiring that counsel be appointed for indigent defendants for that hearing, the magistrate could invite any available attorney to do so, and the district court has the inherent power to assign an attorney to represent a defendant at such hearing. In *State* v. *Mares,* supra, before defendant employed counsel, the district court assigned one to represent him in the preliminary hearing. Both of these methods are common practice in this state. Thus at the preliminary hearing the state ought to provide counsel for any defendant desiring but unable to procure counsel for himself. This should have been made clear to defendants before they decided whether they were ready for that hearing.

But under the circumstances of this case such failure did not constitute prejudicial error. The preliminary hearing is an inquiry, not a trial—it is held in the place of the common law grand jury where the accused is only present if called as a witness and is never represented by counsel. The defendant must be present at a preliminary

hearing and is always entitled to counsel which, if necessary, the state must provide. In a case like this the attorney's only function would have been to develop as much as possible the nature of the state's case and advise the defendant against ill-advised self-incrimination. A defendant may decide to proceed without an attorney, which these defendants evidently did, but without being advised fully as to their rights in that respect. Under such circumstances a preliminary hearing without counsel is only invalid where prejudice is shown. Had the defendants first made their confessions at the preliminary hearing without the aid of counsel the situation might have been different, but at that hearing there was no new evidence developed, the evidence introduced clearly established probable cause to believe defendants guilty of the crime charged, there is no showing whatever even in the light of the developments at the trial that an attorney at that hearing could have aided their cause. The confessions were made prior to that hearing and contained substantially all the damaging evidence against them which they disclosed. True, they re-enacted the crime immediately after that hearing and before counsel was furnished, but they continued to clear things up for the officers after counsel was furnished. Since competent counsel was furnished with ample time to prepare for trial, the failure to furnish counsel for this hearing was not prejudicial to defendants.

Defendants further contend that the instructions were erroneous in that they precluded the possibility of second-degree murder with intent to kill. The instructions authorized the jury to find the defendants guilty of first-degree murder under two categories: (1) If the killing occurred in the perpetration of, or attempt to perpetrate a burglary or robbery; and (2) if it was a willful, deliberate, malicious and premeditated killing. The jury was correctly instructed on second-degree murder where there

is no intention to kill, but were expressly precluded from finding defendants guilty of second-degree murder if they shot the decedent with intention to kill. In *State* v. *Trujillo*, 117 Utah 237, 214 P. 2d 626, we held instructions which failed to point out the possibility of second-degree murder with intention to kill were prejudicial error, but in a later case of *State* v. *Matteri*, 119 Utah 143, 225 P. 2d 325, we held that similar instructions were not prejudicial because the evidence did not require that the question of second-degree murder be submitted to the jury at all.

If the killing occurred while attempting to perpetrate a robbery, it was first-degree murder with or without an intent to kill. There can be no second-degree murder while attempting to rob. Here all the evidence is to the effect that defendants killed decedent while attempting a robbery, the confessions expressly so state, and no other possible motive or explanation of what occurred has been suggested. To find otherwise, under this evidence, would be to violate the jury's oath. Under such a state of fact this court has repeatedly held that it was not error to refuse to submit the question of second-degree murder to the jury. If the court may withdraw the entire second-degree murder question it was not error to withdraw only a part thereof. Such holdings point out that though the jury might, if that question were submitted to it, return a verdict of second-degree murder contrary to the evidence and in violation of their oath, the same as they may do on any other question, this does not require the court to invite them to do so by submitting to them a theory of the case which is not supported by the evidence. See *State* v. *Matteri*, supra; *State* v. *Condit*, 101 Utah 558, 125 P. 2d 801; *State* v. *Oblizalo*, 60 Utah 47, 205 P. 739; *State* v. *Mewhinney*, 43 Utah 135, 134 P. 632, L. R. A. 1916 D, 590, *State* v. *Thorne*, 41 Utah 414, 126 P. 286. The court, therefore, did not err in this respect.

Having found no error the judgment is affirmed.

WOLFE, C. J., and LATIMER, and McDONOUGH, JJ., concur.

CROCKETT, Justice (concurring).

I concur in the results arrived at in the prevailing opinion, but have some reservations respecting certain statements made therein. It recites: "Had they consulted counsel before answering any questions maybe they would not have confessed, for as stated by Mr. Justice JACKSON * * * 'any lawyer worth his salt will tell the suspect in no uncertain terms to make no statement to police under any circumstances.' " I do not see how that idea finds proper application to the facts of this case. It seems to me that it incorrectly presupposes that every person investigated or arrested in regard to a crime is guilty and that the function of the lawyer is to keep the law enforcement officers from learning the truth. Officers may investigate, or even arrest, an innocent person or a guilty one whose conscience prompts him to disclose the truth. In such event, it is not so unusual as is popularly supposed that a lawyer "worth his salt" does advise his accused client to make a full disclosure of all facts and thus assist in the solution of the crime under investigation.

The conduct of the boy Sullivan who was 19 years of age at the time, and very apparently under the domination of his older companion, does not suggest that if he had had counsel the confession would not have been made. The fact is that after he learned that Manzione had died he wanted to give himself up at Cedar City but was prevented from doing so by Braasch. At Las Vegas, he freely confessed to the crime before the officers there had any basis to suspect his guilt. I, therefore, think that the portion quoted from the opinion is hardly fair to that defendant and, moreover, I do not believe that the assumption that attorneys, as a class, would uniformly assist and encourage the boy to conceal his guilt when he wanted to confess, is justified.

The prevailing opinion correctly indicates that the right to have the assistance of counsel at every stage of the proceedings includes the right to counsel at the arraignment at the preliminary hearing and at all subsequent proceedings. At the preliminary hearing, the defendants requested an attorney and did not get one. When they were told they could have one but had to pay for it, they said no more about the matter and apparently acquiesced in going forward without the benefit of counsel. Whether they actually waived their rights to counsel or not may be open to dispute. If not, it was in violation of their right to proceed without providing them with an attorney. Be that as it may, it is not every error that is prejudicial and this can be so no matter how vital the right in question may be. There should be no reversal of the case merely because the law enforcement officers and the justice of the peace may not have done just exactly as the law prescribes, nor because they did not follow what might be pointed out as the most desirable procedure in providing counsel for the defendants. As was very aptly stated by Mr. Justice SCHAUER in the case of *People* v. *Stroble,* Cal. Sup., 226 P. 2d 330, 332: "it is not the function of this court to reverse a judgment solely as a rebuke to 'law enforcement' officers * * *."

The prevailing opinion does no violence to the idea that the privilege of having counsel at every stage of a criminal proceeding is an important right which should not be denied. I agree that under the facts of this case, where the confessions were made before the preliminary hearing, the truth of which has never been questioned by the defendants, it was not prejudicial error for the justice of the peace to proceed with the preliminary hearing without procuring counsel for the defendants.