Ex parte SULLIVAN et al.

United States District Court
D. Utah, Central Division.

Sept. 24, 1952.

A. W. Sandack, Reid W. Nielson, A. J. Moll, Salt Lake City, for petitioners.

Clinton D. Vernon, Atty. Gen. of Utah, Quentin L. Alston, Asst. Atty. Gen. of Utah, for respondents.

RITTER, District Judge.

On February 20, 1952, Melvin Leroy Sullivan and Verne Alfred Braasch filed in this court a Petition for a Writ of Habeas Corpus. On March 14, 1952, Petitioners filed their Amended Petition. They alleged that they were to be put to death the morning of February 26, 1952, by the Warden of the Utah State Penitentiary pursuant to a Judgment and Commitment of the Fifth Judicial District Court of Utah. That Judgment, they claim, is void because the proceedings which led up to it are not in conformity to the standards of fairness and justice required under the Fourteenth Amendment to the United States Constitution.

Petitioners, in their Amended Petition, assert a number of new grounds in support of their Petition for the Writ of Habeas Corpus which were not asserted in the original Petition filed in this court, or in the Petition for Writ of Habeas Corpus filed in the Utah Supreme Court, or on their appeal from the conviction to the Supreme Court of the State of Utah. 229 P.2d 289. Both Petitions attack the validity of all of the proceedings in the State Courts upon the ground that Petitioners have been denied due process of law.

The Attorney General of the State of Utah has moved to dismiss and to strike such new allegations for the reason that Petitioners have not exhausted their State remedies:

First, in that such new claims have never been presented to, nor passed upon by the Utah Supreme Court;

Second, in that Petitioners did not apply to the Supreme Court of the United States for a Writ of Certiorari to review the disallowance of the application for a Writ of Habeas Corpus, and

Third, in that the proceeding in the State Supreme Court was not a serious petition for a Writ, it resulted in a summary denial, no real hearing was held thereon, and that its only purpose was to attempt to make a record of exhaustion of the State remedy, to enable Petitioners to file their application for a Writ in the Federal District Court the following day.

On the afternoon of February 19, 1952, which was the day preceding the filing of the original petition for Writ of Habeas Corpus in this court, Petitioners filed a "Complaint" for a Writ of Habeas Corpus in the Utah Supreme Court. This was disallowed in a per curiam Judgment of the Utah Supreme Court the same afternoon on which the "Complaint" was filed. The judgment of the court appears as follows:

"It appearing from the complaint that the legal matters presented therein have been ruled upon by this court

and therefore it is apparent that no relief could be granted to the plaintiffs even if the Writ of Habeas 'Corpus should issue, the application for a writ is disallowed."

It is upon these facts that counsel base their third ground for the claim that the State remedies have not been exhausted.

Not having sufficient time to consider the merits of the important issues tendered by the petition, by authority of 28 United States Code Annotated, § 2251, this Court granted a stay of execution.

Thereupon, an order was directed to the Warden requiring him to show cause why the relief prayed for in the petition should not be granted. The Warden filed a return in which he set up the State Court's commitment, above referred to, as his authority for executing the Petitioners. And the Warden filed an answer to the petition.

It appearing to the Court during the course of the proceedings that the stay of execution for 45 days was not sufficient time within which carefully to hear and consider the merits of the important issues tendered by the petition, return and answer, the Court on April 4, 1952, by authority of 28 United States Code Annotated, § 2251, granted a stay of execution during the pendency of further proceedings in this Court.

## I
### Exhaustion of State Remedies

■ All State remedies must be exhausted before Petitioners' application for Habeas Corpus can be considered by this Court. 28 U.S.C.A. § 2254; Ex Parte Hawk, 321 U.S. 114, 64 S.Ct. 448, 88 L. Ed. 572; Darr v. Burford, 339 U.S. 200, 70 S.Ct. 587, 94 L.Ed. 761.

Petitioners appealed their conviction of murder in the first degree in the Fifth Judicial District Court of the State of Utah to the Supreme Court of the State of Utah. The conviction was affirmed by that Court in 229 P.2d 289. Petition for rehearing was denied and the Petitioners applied to the Supreme Court of the United States for certiorari, which was denied in

342 U.S. 910, 72 S.Ct. 304. Thereafter, on the day before the application was filed in the Federal Court, Petitioners applied to the Supreme Court of the State of Utah for Writ of Habeas Corpus, as has been indicated above. No application to the Supreme 'Court of the United States was made for certiorari to review this denial of the petition for the writ.

■ For the three reasons urged by the Attorney General heretofore indicated, it is the judgment of this Court that there are state corrective processes available to Petitioners through which relief may be obtained. Specifically Petitioners may apply to the Supreme Court of the State of Utah for a Writ of Habeas Corpus urging all of the grounds urged here, some of which that Court has never passed upon. Review of the judgment of that Court may be obtained upon petition for certiorari in the Supreme Court of the United States.

Application for certiorari in the Supreme Court of the United States is one step in the exhaustion of the State remedies. Darr v. Burford, 339 U.S. 200, 70 S.Ct. 587, 94 L.Ed. 761.

■■ This Court is not limited to the issuance of a final order either granting the Writ of Habeas Corpus and releasing these defendants or of denying the writ.[1] Under the provisions of Sec. 2243 of Title 28 United States Code Annotated, this Court may "dispose of the matter as law and justice require." The order, therefore, will be that this Court retain jurisdiction of this cause. The practice of a Federal Court retaining jurisdiction of the cause where relief is sought in the State Courts has been approved by the Supreme Court of the United States. Shipman v. Du Pre, 1950, 339 U.S. 321, 70 S.Ct. 640, 94 L.Ed. 877. This Court will reserve final ruling both on the merits of the petition and upon the motions of the Attorney General representing the State of Utah. Counsel for Petitioners may have 90 days from date to institute proceedings in the State Court to pursue their remedy by petition for Writ of Habeas Corpus or other corrective process.

1. Ex parte Wells, U.S.Dist.Ct., N.D. of Calif., 1950, 90 F.Supp. 855.

It may be that through these means a final determination of the questions presented in this cause will be obtained from the Supreme Court of the United States. In that case the matter will be brought to an end and much litigation in the Federal Courts avoided. Of course, if in this way such final determination is not obtained, Petitioners have the right to carry the matter through this Court to the United States Court of Appeals for the Tenth Circuit and to the Supreme Court of the United States. The requirement that State remedies be exhausted is more than a polite gesture to State Courts. It is a fundamental principle of our Constitutional system that matters of local concern be dealt with locally. Only when that remedy fails should Federal authority reaching across a continent from Washington seek to intervene.

## II
### Due Process of Law

If I did not believe that there is probable cause for a judgment that these Petitioners have been denied due process of law in the State proceedings, I should not, of course, retain jurisdiction here. In my judgment there is such probable cause.

It might be admitted that defendants were not entitled to have counsel obtained for them at the jail in Las Vegas and at the preliminary hearing in Beaver, although I am far from sure that such is the law. But that does not reach the question here. That question is, whether the officers, after denying defendants counsel, can continue to hound them to give evidence against themselves until there is no escape at the trial, no possibility of a recommendation of mercy.

To refuse Petitioners relief under these circumstances is to put a penalty upon poverty, upon ignorance, upon immaturity and inexperience.

In view of the United States Supreme Court decision in Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, to mention but one of many cases, unquestionably Petitioners were entitled to have effective counsel *at the trial*. The question here is how they ever could have had effective counsel at the trial, no matter how skilled, in view of what went on before trial. They were denied effective counsel at the trial itself because of what went on before trial while the defendants were without counsel, and absolutely under the control of the prosecution.

The time a defendant needs counsel most is immediately after his arrest and until trial. No better case than the one at bar could be found to illustrate this proposition. Two friendless, inexperienced boys without a criminal record are tricked by Las Vegas police to make incriminating admissions. All of the time in question defendants asked for counsel, again and again and again. They were told that if they had no money to hire a lawyer, none would be provided. Written statements were taken, though no counsel is present. The boys were questioned in the Las Vegas jail and on the long automobile ride to Cedar City, Utah, without counsel. A preliminary hearing was held at Beaver, Utah, without counsel. The crime was re-enacted in minute detail, both at the scene and while defendants were confined in the County jail, without counsel, the defendants were taken to a lunch stand to have waitresses identify them, without counsel, they were asked to identify guns while in jail, still without counsel, and during all of this period they repeatedly asked for counsel.

Indeed, counsel was not appointed for them until after they had been arraigned and had entered their pleas of not guilty. By that time the evidence was all neatly tied up for delivery at the trial. All of it was obtained from the mouths of the immature defendants, while they are crying out for counsel and being denied. One cannot escape the conclusion that even boys could not be so persuaded unless there had been held out to them some hope that they would be mercifully dealt with. There is evidence in the record of that. One cannot escape the conviction that they were not advised of their Constitutional rights and therefore had no intelligent notion of what they were doing. There is evidence in the record of that. One can imagine a cynical [2] prosecutor say-

---

2. There is no suggestion here that Mr. Pickett is such a prosecutor.

ing: "Let them have the most illustrious counsel, now. They can't escape the noose. There is nothing that counsel can do for them at the trial."

It is hard for me to see how this procedure satisfies Title 105–15–1 of the Utah Code Annotated, which refers to defendants' "right to the aid of counsel in every stage of the proceedings." It is hard for me to see how defendants can be said either to have waived their Constitutional rights, or not to have been prejudiced by their denial. As to the latter, the defendants stand in peril of their lives. Who can say that a jury would not have recommended mercy if procedural standards suggested were followed? Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461. And it is hard for me to see how this procedure satisfies the canons of decency and fairness which express the notions of justice of all·English-speaking peoples and embraced in the concept of "due process of law" in the Fourteenth Amendment to the Constitution of the United States.

■ In my judgment there has been a denial of fundamental justice. The guilt or innocence of these defendants is not relevant. The great Constitutional principles which are called upon for the defense of the innocent have often been laid down by the United States Supreme Court in cases involving the guilty. The Court has not been so much concerned with the fate of the particular defendant before it. Rather it has been concerned that no precedent shall be made which tends to destroy those guarantees in the Bill of Rights so fundamental to the protection of free men in our Constitutional system. Mr. Justice Frankfurter sums the matter up in Sacher v. U. S., 343 U.S. 1, 72 S.Ct. 451, 462, 96 L.Ed. —:

"Bitter experience has sharpened our realization that a major test of true democracy is the fair administration of justice. * * * In the development of our liberty insistence upon procedural regularity has been a large factor. * * * It is not for nothing

that most of the provisions of our Bill of Rights are concerned with matters of procedure. * * * Time out of mind this Court has reversed conviction for the most heinous offenses, even though no doubt about the guilt of the defendant was entertained. It reversed because the mode by which guilt was established disregarded those standards of procedure which are so precious and so important for our society." (Omissions are starred.)

### III

### The Effect of the Denial of Certiorari By The Supreme Court of the United States to Review the Decision of the Supreme Court of Utah

■ The Supreme Court of the United States denied a petition for certiorari to review the affirmance of the conviction of Petitioners by the Supreme Court of the State of Utah. It is the well established rule that a denial of certiorari does not prove anything except that certiorari was denied. U. S. ex rel. Smith v. Baldi, 3 Cir., 1951, 192 F.2d 540.

Mr. Justice Frankfurter has stated the view of at least five of the Justices of the present Court as follows:

"The significance of a denial of a petition for certiorari ought no longer to require discussion. This Court has said again and again and again that such a denial has no legal significance whatever bearing on the merits of the claim. The denial means that this Court has refused to take the case. It means nothing else. The State court's judgment is left undisturbed without any legal reinforcement whatever of the views which the State court expressed." Darr v. Burford, 339 U.S. 200, 226, 70 S.Ct. 587, 601, 94 L.Ed. 761.

■ A Federal District Court has no choice but to ignore the denial of certiorari and to reach a conclusion on the merits of a petition such as that which is before us.