# Ex parte SULLIVAN, et al.

No. 7950.   Decided February 6, 1953.   (253 P. 2d 378.)

---

[1]*Mares* v. *Hill*, 118 Utah 484, 222 P. 2d 811; *State* v. *Braasch*, 119 Utah 450, 229 P. 2d 289.

See 39 C. J. S., Habeas Corpus, sec. 100. Denial of right to counsel as ground for issuance of habeas coruus. 25 Am. Jur., Habeas Corpus, sec. 49; 146 A. L. R.

*A. W. Sandack, A. J. Moll* and *Reid W. Nielson,* Salt Lake City for appellant.

McDONOUGH, Justice.

Petitioners seek a writ of habeas corpus from this court, alleging that they are illegally confined in the Utah State Prison.

Petitioners were found guilty of first degree murder after a trial in the district court of the Fifth Judicial Dis-

trict of the State of Utah and were thereafter sentenced to death. They appealed their conviction to this court and the sentences were upheld, *State* v. *Braasch,* 119 Utah 450, 229 P. 2d 289. Petition for rehearing was denied in this court on June 19, 1951. Thereafter, petitioners filed a petition for writ of certiorari in the Supreme Court of the United States on November 16, 1951. Certiorari was denied by that court on January 7, 1952, 342 U. S. 910, 72 S. Ct. 304, 96 L. Ed. 681. On February 19, 1952, petitioners made application to this court for a writ of habeas corpus which on the same date was denied. On February 20, 1952, they filed a petition for such writ in the United States District Court, district of Utah. After a hearing, that court on September 24, 1952 handed down an opinion 107 F. Supp. 514 but entered no judgment on the writ, but retained jurisdiction, while giving the petitioners an opportunity to exhaust their remedies in the State courts.

We address ourselves to the issues which are raised by their second petition here.

There can be no doubt about the United States District Court having jurisdiction to issue a writ of habeas corpus in a case where a person is held in custody by virtue of conviction in a State court, if questions as to the validity of his conviction under the Constitution of ▮ the United States are raised by the petition. In 1867, Congress enacted a statute conferring upon the courts of the United States, and the several judges and justices thereof, the power to grant writs of habeas corpus in all cases where a person is allegedly restrained of his liberty in violation of the Constitution or of a treaty or law of the United States. See *Carfer* v. *Caldwell,* 200 U. S. 293, 26 S. Ct. 264 50 L. Ed. 488. A case particularly pertinent in the present proceedings is that *Frank* v. *Mangum,* 237 U. S. 309, 35 S. Ct. 582, 588, 59 L. Ed. 969. Therein the United States Supreme Court, after referring to the enactment of 1867, said:

"There being no doubt of the authority of the Congress to thus liberalize the common-law procedure on habeas corpus in order to

safeguard the liberty of all persons within the jurisdiction of the United States against infringement through any violation of the Constitution or a law or treaty established thereunder, it results that under the section cited a prisoner in custody pursuant to the final judgment of a state court of criminal jurisdiction may have a judicial inquiry in a court of the United States into the very truth and substance of the causes of his detention, although it may become necessary to look behind and beyond the record of his conviction to a sufficient extent to test the jurisdiction of the state court to proceed to judgment against him. *Re Cuddy*, 131 U. S. 280, 283, 286, 9 S. Ct. 703, 33 L. Ed. 154, 155, 157; *Re Mayfield*, 141 U. S. 107, 116, 11 S. Ct. 939, 35 L. Ed. 635, 638; *Whitten* v. *Tomlinson*, 160 U. S. 231, 242, 16 S. Ct. 297, 40 L. Ed. 406, 412; *Re Watts*, 190 U. S. 1, 35, 23 S. Ct. 718, 47 L. Ed. 933, 944; 14 Am. Crim. Rep. 48."

Conceding the jurisdiction of the United States District Court to try the issue raised under the writ of habeas corpus, we next confront the question as to whether this court should, in light of the fact the same matter is presently being considered by the United States District Court, entertain the petition; or whether we should deny the issuance of the writ upon the sole ground that another court of concurrent jurisdiction in the premises has taken jurisdiction of the matter and has not yet entered a judgment. Normally, comity would stay our hand. But the United States District Court, sustaining a contention made by the Attorney General of the State of Utah, held that the petitioners had not exhausted their remedies in the state courts; and this being a condition precedent to the United States District Court acting in the matter, he advised that they take steps to exhaust such remedies and if relief were not thereby secured, he would enter an appropriate judgment in the proceedings, in the meantime retaining jurisdiction under the writ. This ruling was made pursuant to Title 28, U. S. C. A. § 2243, which provides that in habeas corpus the court

"shall summarily hear and determine the facts, and dispose of the matter as law and justice require",

and on the authority of *Ex parte Wells,* D. C., 90 F. Supp. 855, and *Shipman* v. *Dupre,* 339 U. S. 321, 70 S. Ct. 640, 94 L. Ed. 877.

While we entertain some doubt about the question, we are not disposed to deny the writ merely upon the ground that the United States District Court having assumed jurisdiction should proceed to determine the question without further recourse to this court. The *Dupre* ■ case, supra, was an action for a declaratory judgment presented to a statutory three-judge federal court wherein the plaintiff asked that a statute of the State of Souh Carolina be declared in violation of the Constitution of the United States. The court heard the matter on the merits and dismissed the complaint. On appeal, the United States District Court remanded the case with instructions that the United States District Court retain jurisdiction, since it did not appear that the courts of South Carolina had construed the statute involved, in order to give plaintiff an opportunity by appropriate proceedings to have the statute construed by the state courts of South Carolina. Of course, construction of state statutes is peculiarly a province of the state courts, and such construction is binding upon all of the Federal courts. It was therefore peculiarly appropriate that a Federal court not take action declaring a state statute to be either valid or invalid until construction by the state courts, since subsequent construction by the state courts might remove any question as to its constitutionality.

In *Ex parte Wells,* supra, the petitioner, a prisoner in Folsom Prison, secured a writ of habeas corpus from the United States District Court of the Northern District of California, to test the constitutionality of a sentence of death imposed upon his being convicted of violating a statute of the State of California. This statute made it a capital offense for a person undergoing a life sentence to, with malice aforethought, assault any other person with a dangerous instrumentality with intent to do great bodily harm. That conviction, like the one here involved, was appealed

to the Supreme Court of California and was there upheld. One of the questions raised on appeal was the constitutionality of the statute in question. Under the authority of previous cases decided by that Supreme Court and under the reasoning of the court in the case itself, the constitutionality of the act was upheld, *People* v. *Wells*, 33 Cal. 2d 330, 202 P. 2d 53. The attack on the constitutionality of the statute there made was that, as applied to a prisoner serving an indeterminate sentence of not less than five years, whose maximum term at the prison had not been fixed by Adult Authority, the statute deprives such prisoner of equal protection of the law.

In the United States court, as we read the opinion, it was not merely the constitutionality of the statute, as construed by the Supreme Court of California, which was brought into question, but its application in the particular case. It was made to appear by evidence adduced at the hearing in the United States District Court, that the Adult Authority of California had refrained from fixing any maximum sentence upon recommendation of the district attorney of Sacramento County.

Several years prior to the commission of the offense of which he was found guilty and sentenced to death, the Adult Authority, while considering the question of whether the petitioner should be paroled, addressed a letter on the subject to the district attorney who had prosecuted the case against petitioner. In reply to that letter, the district attorney suggested and recommended that no maximum term be fixed by the Adult Authority. He gave as his reason for this recommendation that if no such action were taken the maximum sentence would be construed to be a life sentence. He then stated that since the prisoner was a dangerous character, should be, in the absence of a maximum term being fixed, commit such an assault as is defined in the statute under which he was convicted, he would be guilty of a capital offense. It was under this state of fact that the United States District Court concluded that the due process

clause had been violated. However, since the precise question thus raised, had not, in its opinion, been presented to the Supreme Court of California, the United States court retained jurisdiction and reserved a final ruling in the matter until appropriate proceedings could be taken to exhaust petitioner's remedy in the state courts. In short, in the California case it was held by the United States district judge that while the constitutionality of the statute in question as construed by the California courts had theretofore been ruled upon, the validity of the sentence in the light of the additional evidence produced before the United States District Court had not.

Such is not the case here. The question of due process and the question of the validity of the conviction under the Constitution and statutes of the State of Utah by virtue of the fact that petitioners were deprived of counsel at the preliminary hearing and that they thereafter enacted the crime at the scene thereof were fully considered and discussed by this court in its opinion in the case of *State* v. *Braasch,* supra. Furthermore, we were again confronted with the question of due process in the former application for a writ of habeas corpus made to this court. True, as stated by the United States District Court, counsel for petitioners in appearing at the hearing on the former petition for habeas corpus stated that it was applied for here in order that petitioners might exhaust their State remedies before making application to the Federal court. But that is not to say that the allegations of the petition were not considered by this court. On the contrary, they were and the court held, and rightly so, that no question was there presented which had not been previously decided by this court on the appeal from the convictions. Thus, 229 P. 2d at page 293 of the opinion, on the appeal, after citing a number of United States Supreme Court cases on the question, we, through Mr. Justice Wade, stated:

"These cases deal with the right of counsel at the trial not with the right to consult counsel before a defendant may be questioned by

police officers. We have found no case which holds that a confession is not admissible in evidence merely because the defendant was immature and without the advice of counsel, friends or relatives when it was made and *Mares* v. *Hill*, supra [118 Utah 484, 222 P. 2d 811], considered this very problem and held that those facts did not make the confession inadmissible in evidence."

Again at page 294 of 229 P. 2d we stated, in reference to the failure to provide counsel at the preliminary hearing:

"But under the circumstances of this case such failure did not constitute prejudicial error. The preliminary hearing is an inquiry not a trial—it is held in the place of the common law grand jury where the accused is only present if called as a witness and is never represented by counsel.[1] * * * Had the defendants first made their confessions at the preliminary hearing without the aid of counsel the situation might have been different, but at that hearing there was no new evidence developed, the evidence introduced clearly established probable cause to believe defendants guilty of the crime charged, there is no showing whatever even in the light of the developments at the trial that an attorney at that hearing could have aided their cause. The confessions were made prior to that hearing and contained substantially all the damaging evidence against them which they disclosed. True, they re-enacted the crime immediately after that hearing and before counsel was furnished, but they continued to clear things up for the officers after counsel was furnished. Since competent counsel was furnished with ample time to prepare for trial the failure to furnish counsel for this hearing was not prejudicial to defendants."

It should further be added that the record made in the United States District Court which is made a part of the application for the writ here, does not disclose that any new

---

[1]The holding of this court as to the right to counsel before and at the preliminary hearing is in accord with that of the Court of Appeals of the Ninth Circuit where in the case of *Price* v. *Johnston*, 1944, 144 F. 2d 260, certiorari denied, 323 U. S. 789, 65 S. Ct. 312, 89 L. Ed. 629, rehearing denied 323 U. S. 819, 65 S. Ct. 558, 89 L. Ed. 650, it was held that a prisoner, who was properly arraigned and tried on indictment by a court having jurisdiction over his person and alleged offense, was not entitled to discharge from custody on a writ of habeas corpus on ground that he was denied assistance of counsel at the time of arrest, immediately thereafter, and when before the United States Commissioners.

or additional information was divulged in the re-enaction of the crime other than that which was contained in the prior confessions.

Besides what is said above, there are other compelling reasons why the petition for a writ of habeas corpus should be denied. In the first place we have grave doubts that the testimony given in the United States District Court by the two condemned men was, in light of the record made at the murder trial, admissible in evidence. For while it is true, as noted in the case of *Frank* v. *Magnum*, supra, that a United States Court may look behind and beyond the record of a person's conviction to a sufficient extent to test the jurisdiction of the state court to proceed to judgment against him, this does not extend to facts not only outside the record but inconsistent with the record made in the trial court.

In *Riddle* v. *Dyche*, 262 U. S. 333, 43 S. Ct. 555, 556, 67 L. Ed. 1009, the United States Supreme Court, speaking through Mr. Justice Sutherland, said:

"The power to inquire into facts outside the record, allowed under some circumstances (*In re Mayfield* [1891], 141 U. S. 107, 116, 11 S. Ct. 939, 35 L. Ed. 635 [638]), cannot be extended to such as are inconsistent with the record.

"The Frank Case [*Frank* v. *Mangum*] relied upon by appellant, does not decide otherwise. The language quoted ([D. C. Ga. 1915] 237 U. S. [309] 331, 35 S. Ct. [582] 589, 59 L. Ed. 969), to the effect that the court may 'look behind and beyond the record * * * to a sufficient extent to test the jurisdiction of the * * * court' and 'inquire into jurisdictional facts, whether they appear upon the record or not,' was not meant to abrogate the rule established by prior decisions that the record may not be contradicted collaterally, at least where, as here, jurisdiction of the cause or parties is not involved, and this is demonstrated by the case cited in support of the statement."

The evidence given by these applicants in the United States District Court was inconsistent with, indeed directly contradictory of that given in the trial court, which bore

on the voluntariness of the confessions received in evidence, as will appear from what is said hereinafter. It was likewise inconsistent with the findings made by the trial judge in the State district court on this issue. It was further inconsistent with the implied finding of the jury, in the light of the instructions of the court, with respect to the consideration of the confessions received in evidence. Surely it was not the intention of Congress in enacting the Habeas Corpus Act to permit a retrial in the Federal court of a fundamental issue tried to a jury under the safeguards of the State and Federal Constitutions in a State court of general jurisdiction. If so, it was meant to cut through State criminal procedure in such manner as to accord but limited jurisdiction to state courts in trying offenses against the sovereignty of the State and to make of a Federal trial court an appellate tribunal. More than that, such trial court may do what this court is not authorized to do on appeal. It may, in effect, set aside a finding of the trial court supported by uncontradicted evidence.

To express doubt concerning the admissibility of the evidence in question, is not to run counter to *Frank* v. *Magnum*, supra, and the many subsequent cases decided by U. S. appellate tribunals. In cases where it is alleged that an apparent waiver of a constitutional right was induced by coercion, fraud or through ignorance; where deprivation of the right to counsel at the trial and in preparation therefor is brought into the issue; where a plea of guilty is induced by any improper conduct on the part of the authorities which makes that plea other than the voluntary and informed act of the accused; where the very trial itself is fraught with such evidence unfairness to the accused as to show a violation of his rights; in these and in other cases, a court in habeas corpus may of course look beyond the record to determine the truth of those allegations. But this case, in our considered opinion, does not

come within the ambit of the cases dealing with such searching inquiry.

But the question of the admissibility of such evidence aside, to give it credence as a basis for finding lack of due process, would be to fly in the face of human experience. At the trial, several witnesses testified in behalf of the state to the effect that both defendants prior to confessing were told that they had a right not to make any statement; that they were told that their statement might be used against them; that they were again told the same with respect to signing the confessions after they had been transcribed, They further testified that no coercion of any kind was employed nor was any promise made to the defendants to secure the confessions. Neither defendant contradicted this testimony in any particular, nor was any evidence adduced contrary thereto. On appeal to this court, additional counsel were appointed for the condemned men. Nowhere in the briefs nor in oral argument was any suggestion made that defendants were not fully informed of their rights or that any coercion was used upon them. The only argument made on that phase of the case was that because the condemned men were young and inexperienced and without friends that the very securing of the confessions from them was in the nature of coercion. This contention was rejected by this court, State v. Braasch, supra.

Again, when their present counsel heretofore made application to this court in their behalf for a writ of habeas corpus, no such allegation was contained in the application. It must be assumed that counsel who represented them on appeal and on the former petition for habeas corpus consulted with them. And yet, not until more than two years after the trial of the action was any suggestion made with respect to their not being informed of their constitutional rights prior to the confession given in Nevada. But disregarding their prior silence, their testimony in and of itself does not carry conviction. While petitioner Sullivan did give testimony in the United States District Court relative

to not being advised of his constitutional rights not to make a statement at the time the confessions were secured, nevertheless petitioner Braasch when testifying concerning the facts surrounding the re-enactment of the crime at Beaver City, was asked by his counsel,

"Did anyone ever tell you that you had a right not to speak, or not to reenact the crime, or not to identify these weapons, and that if you chose to do so that the matter would be—or could be used against you?"

Answer:

"They told us that about the confessions."

That petitioners, in their appearance before the United States District Court, were able to conjure up facts and circumstances that had not occurred to their minds before, or at least which it had not occurred to them to reveal, is understandable; that we, on the total record, should be expected to give full credence to their testimony is but a manifestation of that hope which springs eternal in the human breast. We reject their contention that they were denied due process.

In denying this application, we are fully cognizant of the fact that this court is as rigidly bound as any Federal court in the land to guard and protect rights secured by the Constitution of the United States and no less by the Constitution of the State of Utah. The application for a writ of habeas corpus is denied.

WOLFE, C. J., and CROCKETT and WADE, JJ., concur.

CROCKETT and WADE, JJ., concur in the opinion of McDONOUGH, J., and also in the views expressed by HENRIOD, J.

HENRIOD, Justice (concurring).

I concur. The petition admittedly purports to be bottomed on evidence adduced incident to a previous petition for writ

of habeas corpus filed by defendants in the United States District Court for Utah, which evidence we believe does not warrant any change of position by this court. That court claimed to have, and assumed jurisdiction of the matter. Such assumption of jurisdiction, we believe, is predicable only on the theory that defendants may have been denied constitutional rights under the Fourteenth Amendment to the Constitution of the United States. The United States District Court heard the evidence presented to it, and if it had jurisdiction, as it claims, it very well could have granted or denied the petition. Why it did neither, but chose to permit this case to find haven again in this court by way of petition anew, is a matter of conjecture here and a matter of personal conviction there. In permitting and encouraging its voyage back to the Supreme Court of Utah, the Federal Court, in a judgment punctuated by opinion, has intimated strongly that else we do its bidding *it* quite assuredly will, creating the anomaly of two courts having concomitant jurisdiction, the one to survive a refusal of the other to agree.

The United States District Court may determine the nature and scope of its own jurisdiction and the matter of its own responsibility to both the defendants and the citizens of Utah. In so stating, an erroneous public impression, apparently conceived, gestated, delivered and nurtured by this case, to the effect that the United States District Court for Utah is some sort of appellate tribunal to which an appeal can be taken from the Supreme Court of Utah should be corrected. The Federal District Court has no such jurisdiction but is an inferior court in the Federal system, from which an appeal may be taken to the Circuit and Supreme Courts of the United States.

The petition and record accompanying it disclose nothing new of substance that would make imperative any change in the conclusion that these defendants have been accorded due process, have had a fair trial under our American and State systems and have not been denied any constitutional

rights under either. Nothing in the record seems to convince that there has evolved anything substantially new that was not or could not have been presented at the jury trial, where the defendants, the writer believes, were represented by able and competent counsel, despite the veiled innuendo found in the record to the contrary. The judgment and opinion of the United States District Court, made a part of the record here, seems to accept as gospel the testimony of the defendants, confessed killers, who years after the admitted homicide, now for the first time testify to certain purported facts not heretofore divulged, albeit, as divulged, remain unconvincing as a basis for exculpation under a claim of denial of due process.

Two learned professors of law, appointed by the United States District Court, as *its* friends and advisers, after careful consideration, decided as we do, that defendants had been accorded due process of law. Apparently the Supreme Court of the United States also shares our view and that of the professors, since it refused to review this case on appeal from the Utah Supreme Court, where the very issue here —a claimed denial of constitutional rights under the Fourteenth Amendment, was before it there. It is no answer to say that in refusing to hear such appeal, the United States Supreme Court decided nothing by way of affirming our decision, since that high court treats not lightly the meritorious or convincing claim of a citizen of these United States that he has been denied inalienable and fundamental human rights guaranteed him under the Constitution. If defendants' protestations reasonably had been substantiated by the record before the United States Supreme Court, or had indicated even a possible invasion of Constitutional rights, I believe that high tribunal quickly and quite earnestly would have entertained jurisdiction to determine whether it would grant the relief prayed, else the members of the court would have treated more lightly the oaths they took than did they the rights of defendants.

Significant it is that nowhere in this case can be found an intimation that these defendants ever repudiated their confessions to the effect that, robbery intended, each deliberately fired shots into the body of a respected, law-abiding citizen. It is equally significant that no competent authority has been cited that, based on the record of this case, would justify the liberation, by habeas corpus or otherwise, of these confessed slayers.

We are jealous of the rights of all accused persons, but we are quite as jealous of the rights of the law-abiding citizen, including the right to be secure in his home and in his business, free from felonious intrusion by persons armed and bent on robbery, possessed of a willingness to gain their ends at the expense of terminating human life in cold blood.