In the Matter of the APPLICATION of Melvin Leroy SULLIVAN and Verne Alfred Braasch For a Writ of Habeas Corpus.

Civil No. 21–52.

United States District Court, D. Utah, Central Division.

Nov. 30, 1954.

566

A. W. Sandack, Salt Lake City, for petitioner Melvin LeRoy Sullivan.

Reid W. Nielson and A. J. Moll, Salt Lake City, for petitioner Verne Alfred Braasch.

E. R. Callister, Atty. Gen. of Utah. Ken Chamberlain, Asst. Atty. Gen. of Utah.

RITTER, Chief Judge.

The Supreme Court of the United States long ago handed down decisions which are controlling in this case. It is the duty of this court to follow them.

*The Supreme Court holds that the doors of the federal District Court are open to the accused to determine whether a state court conviction violates the constitution of the United States.*

■ Many times the Supreme Court has ruled that the doors of the federal district courts are open to the prisoner to determine whether or not his conviction was obtained in violation of the Constitution of the United States. And, this is true though all of the issues in the case have been decided by the Supreme Court of the state, and though certiorari has been denied by the Supreme Court of the United States on applications to review the state court decisions.[1] Indeed, this doctrine is now enacted into law in the Judicial Code of the United States.[2]

*The Supreme Court holds that denial of certiorari is no legal reinforcement whatever of the views of the Supreme Court of Utah.*

■ It is now the well settled doctrine of the United States Supreme Court that the denial of a petition for a writ of certiorari decides nothing. Such action by the Supreme Court of the United States means only that the court refuses to review the matter.

In Darr v. Burford, supra, 339 U.S. 200, 70 S.Ct. 587, 601, Mr. Justice Frankfurter stated the view of the court as follows:

"The significance of a denial of a petition for certiorari ought no longer to require discussion. This Court has said again and again and again that such a denial has no legal significance whatever bearing on the merits of the claim. The denial means that this Court has refused to take the case. It means nothing else. The State court's judgment is left undisturbed without any legal reinforcement whatever of the views which the State court expressed."

When this case was before this court at an earlier stage the court held, D.C., 107 F.Supp. 514, 517, that Braasch and Sullivan had not exhausted their state remedies, and at that time the court granted the motion of the Attorney General of the State of Utah to send the case back to the state courts to exhaust all of

1. One of the most recent decisions is Brown v. Allen, 1953, 344 U.S. 443, 448, 73 S.Ct. 397, 97 L.Ed. 469; decided last term. Darr v. Burford, 1950, 339 U.S. 200, 70 S.Ct. 587, 94 L.Ed. 761; Ex parte Hawk, 1944, 321 U.S. 114, 64 S.Ct. 448, 88 L.Ed. 572.

2. 28 U.S.C.A. §§ 2241 and 2254.

the remedies there. The federal district court could not consider and decide the matter until the state remedies were exhausted. This was the clear mandate of the decisions of the Supreme Court of the United States.

At the time this court sent the case back to the state courts it was hoped that a final determination of the questions presented would be obtained from the Supreme Court of the United States and thus the matter brought to an end and much litigation in the federal courts avoided. This court said at that time:

> "It may be that through these means a final determination of the questions presented in this cause will be obtained from the Supreme Court of the United States. In that case the matter will be brought to an end and much litigation in the Federal Courts avoided." [3]

The hope there expressed has not been realized. And so it becomes necessary for this court to determine the matter upon the merits.

Since the case was here before, the Supreme Court of Utah, 253 P.2d 378, has denied a petition for habeas corpus and the Supreme Court of the United States, 346 U.S. 861, 74 S.Ct. 75, has denied a petition for a writ of certiorari.

On April 13, 1954, the United States District Court for Utah requested the Attorney General of the State of Utah and counsel for the defense to complete the record and to bring their briefs down to date. On October 19, 1954, a stipulation entered into by and between the Attorney General of the State of Utah and defense counsel to complete the record was filed by them.

*The Supreme Court holds the due process clause of the Fourteenth Amendment protects defendants in state courts in their right to the assistance of counsel.*

For over two decades it has been the firmly established view of the United States Supreme Court that the Fourteenth Amendment to the Constitution of the United States guarantees the right of the accused in criminal prosecutions in state courts to the assistance of counsel for his defense. This was the holding of the Supreme Court of the United States in the now famous Scottsboro Cases.[4] In that historic decision, Mr. Justice Sutherland, who went to the high court from the state of Utah, wrote the opinion of the court, and said:

> "What, then, does a hearing include? Historically and in practice, in our own country at least, it has always included the right to the aid of counsel when desired and provided by the party asserting the right. The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. *He requires the guiding hand of counsel at every step in the proceedings against him.* Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence. If that be true of men of intelligence, how much more true is it of the ignorant

---

3. Reference is made to the decision of this court in Braasch and Sullivan v. State of Utah, D.C., 107 F.Supp. 514, and the opinion therein is incorporated by reference.

4. Powell v. State of Alabama, 1932, 287 U.S. 45, 53 S.Ct. 55, 64, 77 L.Ed. 158; 17 Minn.L.R. 415; 32 Columbia L.R. 1430.

and illiterate, or those of feeble intellect. *If in any case, civil or criminal, a state or federal court were arbitrarily to refuse to hear a party by counsel, employed by and appearing for him, it reasonably may not be doubted that such a refusal would be a denial of a hearing, and, therefore, of due process in the constitutional sense.*" (Emphasis added.)

The decision in Powell v. State of Alabama was limited expressly to capital cases where defendants were sentenced to death. Such is the case at bar.[5]

The doctrine of the Scottsboro Cases was reaffirmed as recently as November 8, 1954, by unanimous decision of the Supreme Court of the United States in the case of Chandler v. Warden Fretag.[6]

*The Supreme Court holds that the accused "requires the guiding hand of counsel at every step in the proceedings against him."*

Of particular significance in the case at bar is Justice Sutherland's statement that the accused "requires the guiding hand of counsel at every step in the proceedings against him."

Defendants were denied counsel at several steps in these proceedings.

"The due process clause is invoked * * * for the purpose of requiring the court, whether there is a request or not, *to appoint such counsel at such time and under such circumstances as to give the defendant the full benefit of his rights.*"[7]

The right to counsel has been given a broad interpretation, not only in the Scottsboro cases, and other United States Supreme Court cases, but in the state decisions and statutes. *It has been held to confer every privilege which will make the presence and aid of counsel a valuable right.* It contemplates not only the right to counsel in trial, but also at every stage of the proceedings.[8]

Let it be not overlooked that defendants in the instant case requested counsel time and time again.[9]

And, moreover, in a provision much stronger than that in the Sixth Amendment, the appointment of counsel is required by the Utah Constitution and Statutes.

Article I, Sec. 12, Constitution of Utah, provides:

"In criminal prosecutions the accused shall have the right to appear and defend in person and by counsel, * * *. In no instance shall any accused person, before final judgment, be compelled to advance money or fees to secure the rights herein guaranteed. * * *"

*The Utah Statutes contemplate,* not only *the right to counsel* in trial, but also *at every stage of the proceedings.* Title 105-15-1 Utah Code Annotated 1943, provides:

"When the defendant is brought before the magistrate upon an arrest * * * the magistrate must immediately inform him of the charge against him and of *his right to the*

---

5. This is an important distinction to keep in mind in reading the cases. For example, Betts v. Brady, 1942, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595, was *not* a capital case, and is otherwise distinguishable because *inter alia,* the appointment of counsel was not required by state law.

6. U.S., 75 S.Ct. 1, 5.

7. Orfield, Criminal Procedure from Arrest to Appeal, Judicial Administration Series, N.Y. Univ. Press, p. 418. (Emphasis added.)

8. Orfield, supra, pp. 420, 421, continues,

"After ample notice of the charge against him, of its consequences, and of his rights, the *defendant should be allowed reasonable time to procure counsel who should be allowed every reasonable opportunity for full and confidential consultation with the defendant, and reasonable time for preparation of the defense.* Where the defendant is unable to procure counsel, it is the *duty of many courts by statute, and the practice in others by custom, to inform him of his rights to have counsel appointed*". (Emphasis added.)

9. See, infra, Footnote 16.

*aid of counsel in every stage of the proceedings."* (Emphasis added.)

Title 105-15-2, Utah Code Annotated 1943, adopts the language of earlier Utah Supreme Court cases and provides:

"The magistrate must also allow the defendant a reasonable time to send for counsel and postpone the examination for that purpose, and must, upon the request of the defendant, require a peace officer to take a message to any attorney the defendant may name in the precinct or the city. The officer must, without delay and without fee, perform that duty." [10]

The Supreme Court of the State of Utah itself recognized the right of the defendants, Braasch and Sullivan, to the advice of counsel at the preliminary hearing. Speaking for the Court, Mr. Justice Wade said:[11]

"Defendants claim that they were also deprived of the aid of counsel at the preliminary hearing. *The district attorney's explanation to the defendants of their right to the aid of counsel suggests that they were entitled to an attorney at that hearing only if they could procure such services without the aid of the state.* In State v. Crank, 105 Utah 332, 142 P.2d 178, 170 A.L.R. 542, we pointed out that, although there was no express statutory provision requiring that counsel be appointed for indigent defendants for that hearing, the magistrate could invite any available attorney to do so, and the district court has the inherent power to assign an attorney to represent a

defendant at such hearing. In State v. Mares, supra [113 Utah 225, 192 P.2d 861.], before defendant employed counsel, the district court assigned one to represent him in the preliminary hearing. *Both of these methods are common practice in this state. Thus at the preliminary hearing the state ought to provide counsel for any defendant desiring but unable to procure counsel for himself. This should have been made clear to defendants before they decided whether they were ready for that hearing."* (Emphasis added.)

■ Our forefathers deemed the right to counsel an indispensable safeguard to the liberty of free men and wrote the guarantees of the right to counsel into our federal[12] and state constitutions with many centuries of history in mind—centuries of human suffering and torment under tyranny. Mr. Justice Black, delivering the opinion of the court, in Chambers v. State of Florida,[13] said:

"The determination to preserve an accused's right to procedural due process sprang in large part from knowledge of the historical truth that the rights and liberties of people accused of crime could not be safely entrusted to secret inquisitorial processes. The testimony of centuries, in governments of varying kinds over populations of different races and beliefs, stood as proof that physical and mental torture and coercion had brought about the tragically unjust sacrifices of some who were the noblest and most use-

10. State v. Pay, 1915, 45 Utah 411, 146 P. 300, 304; State v. Mewhinney, 1913, 43 Utah 135, 134 P. 632, L.R.A.1916D, 590.

11. State v. Braasch, 1951, Utah, 229 P.2d 289, 293-294.

12. The Sixth Amendment secures the right of the accused to counsel in federal court proceedings. Johnson v. Zerbst, 1938, 304 U.S. 458, 58 S.Ct. 1019, 82 L. Ed. 1461; Walker v. Johnston, 1941, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830;

Holtzoff, "The Right of Counsel Under the Sixth Amendment", (1944); N.Y. U.L.Q.Rev. 1; Orfield, Criminal Procedure from Arrest to Appeal, Judicial Administration Series, N.Y. Univ. Press, pp. 418-419; Glasser v. U. S., 1942, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680; Foster v. People of State of Ill., 1947, 332 U.S. 134, 67 S.Ct. 1716, 91 L.Ed. 1955; Von Moltke v. Gillies, 1948, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309.

13. 1940, 309 U.S. 227, 60 S.Ct. 472, 477, 84 L.Ed. 716.

ful of their generations. The rack, the thumbscrew, the wheel, solitary confinement, protracted questioning and cross questioning, and other ingenious forms of entrapment of the helpless or unpopular had left their wake of mutilated bodies and shattered minds along the way to the cross, the guillotine, the stake and the hangman's noose. And they who have suffered most from secret and dictatorial proceedings have almost always been the poor, the ignorant, the numerically weak, the friendless, and the powerless.

"This requirement—of conforming to fundamental standards of procedure in criminal trials—was made operative against the States by the Fourteenth Amendment."

The right to counsel is such a basic and fundamental right as to require its uniform availability to those accused of crime in both state and federal courts. It is perfectly clear that the ordinary layman does not understand technical questions of procedure, practice, pleading and evidence and this is all the more true where the accused is incapable of making his defense because of youth, illiteracy, ignorance, poverty or the like. In the case at bar the defendants were boys of the age of 19 and 21, uneducated, destitute, alone, without relatives or friends, in a strange community. Neither defendant had a record. Neither had ever been arrested before. And they were inexperienced.

Justice Black, speaking for the Supreme Court of the United States, in Johnson v. Zerbst, supra [304 U.S. 458, 58 S.Ct. 1022], said:

"The Sixth Amendment stands as a constant admonition that if the constitutional safeguards it provides be lost, justice will not 'still be done.' It embodies a realistic recognition of the obvious truth that the average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty, wherein the prosecution is presented by experienced and learned counsel. That which is simple, orderly, and necessary to the lawyer, to the untrained layman, may appear intricate, complex and mysterious."

*The defendants were denied counsel at several steps in these proceedings.*

Braasch and Sullivan had no counsel at the arraignment, nor did they advise with counsel prior to entering their pleas though under Utah Statutes entering a plea to the information or indictment waived errors committed at earlier stages of the proceeding.[14] The Attorney General of the State of Utah and defense counsel have stipulated and agreed that defendants were arraigned and their pleas taken without counsel present, and without advice of counsel prior to entering their pleas.[15] "The entering of a plea is one of the most critical stages in the proceedings". (Appendix A)

Defendants had no counsel at the preliminary hearing. They had no counsel at the scene of the murder when they re-enacted the crime in dramatic detail and before an already inflamed public. They had no counsel when the crime was again re-enacted for police at the county jail. They had no counsel when defendants were taken to a lunchroom near the scene of the murder, again before the public, to have waitresses identify them, nor when the waitresses were taken to view them at the county jail for that purpose. These waitresses identified defendants at the trial. Defendants had no counsel when asked to identify guns at the county jail. And, they had no counsel during the many visits of police to question defendants in the jail.

Defendants had no counsel when they were tricked by police in the Las Vegas, Nevada, jail into making incriminating

14. Sec. 105–16–2, Utah Code Annotated 1943; Sec. 105–22–12, Utah Code Annotated 1943; Sec. 105–22–18, Utah Code Annotated 1943; Sec. 105–23–10, Utah Code Annotated 1943. (See Appendix A)

15. See Stipulation, Appendix B.

admissions. They had no counsel when their written statements were taken at Las Vegas. They had no counsel during questioning in the Las Vegas jail and during the long (200 mile) automobile ride from Las Vegas to Cedar City, Utah. They had no counsel in Nevada when they waived extradition.

Defendants demanded counsel time and time again: When they were questioned and tricked in the Las Vegas jail. At the time written statements were taken in the evening at Las Vegas jail. At the beginning, and again at the end, of the preliminary hearing in Beaver, Utah. At the time of the arraignment and pleas in Beaver, Utah.[16]

Defendants were arrested in Las Vegas, Nevada, about 5:45 a. m., the morning of October 23rd, and booked on suspicion of a burglary in California. Later they were questioned about the murder at Beaver, Utah, and tricked into the admission.

They had no counsel until some days after the arraignment which was held October 29th. (The record is not clear how long after).

So, the police had their own way with the defendants for a period of over seven days. During this time they were denied counsel, kept absolutely under the control of the prosecution, and hounded to give evidence against themselves.

Both at the time the defendants' confessions were taken and at the time of the preliminary hearing, defendants were told they would have to hire their own attorney, that none would be provided for them, that they would get one at the trial. They were led to believe that they had no right to counsel until the trial, unless they had the means themselves to hire counsel. As we have seen, this was wrong as a matter of law. No opportunity was given defendants to obtain counsel.

*The defendants were denied effective counsel at the trial itself, because of what had transpired before trial.*

The constitutional right to counsel becomes meaningless when the prisoner cannot afford to hire a lawyer to give him the help which he needs, when he is given no opportunity to obtain a lawyer for himself, when none is appointed for him until after arraignment, when he is kept for over 7 days completely under the control of the prosecution and until it is done with the business of extracting the last bit of information from him, and when he has lost any legitimate defense long before he is put on trial.

There is no significant difference between denial of counsel at the trial and such denial before trial to the point that no trial lawyer could be effective, no matter how skilled. The failure to have counsel in regard to all matters up to and through the arraignment and plea "permeates the entire proceeding, with indelible effects that could not be removed". The error was done; the damage was committed.

It is for these reasons that the constitutional right to a lawyer is not limited to counsel at the trial. That right, so basic, and so vitally important, to the preservation of our lives and our liberty must not be whittled away bit by bit by narrow or restricting limitations upon it until we shall find that we have lost it entirely. We must be made secure in the right in fullest measure and with all of the benefits which make it valuable and

16. During the day police officers interrogated defendants in the Las Vegas jail before their confessions were taken. (Transcript of United States District Court hearing in habeas corpus proceeding, page 58). At the time confessions were taken in the evening at the Las Vegas jail, Braasch demanded counsel, Transcript of trial in State District Court, pp. 93, 102, 116, 148, 186, 203. Transcript of hearing in United States Court of District of Utah in habeas corpus proceeding, pp. 37–38. 49–50, 57–59, 66, 90–91, 93–94, 158–159, 172, 191–194, 198. At the beginning and at the end of the preliminary hearing in Beaver, Utah. Transcript of preliminary hearing, pp. 2, 44. Transcript of U. S. District Court hearing in habeas corpus proceeding, pp. 42–43, 59–60, 86, 120, 309–310. At the time of the arraignment in Beaver, Utah, see court's minute entry, Appendix C.

effective. And this for the protection of ourselves and our children, and not at all from compassion for those guilty of crime.

■ The provision of the Constitution which guarantees the right of the accused to an attorney for his defense was designed, of course, to protect the innocent. But, to deny constitutional protection to the guilty is also to deny that protection to the innocent. The court must be concerned that no precedent shall be made which tends to destroy those guarantees in the Bill of Rights so fundamental to the protection of free men in our constitutional system. Ours is a constitutional system of ordered liberty, and not one merely of giving the accused his just deserts. Persons accused of crime must be convicted in accordance with the rules. Mr. Justice Frankfurter sums the matter up in Sacher v. U. S.[17]

"Bitter experience has sharpened our realization that a major test of true democracy is the fair administration of justice. * * * 'In the development of our liberty insistence upon procedural regularity has been a large factor.' * * * It is not for nothing that most of the provisions of our Bill of Rights are concerned with matters of procedure. * * * *Time out of mind this Court has reversed convictions for the most heinous offenses, even though no doubt about the guilt of the defendants was entertained.* It reversed because the mode by which guilt was established disregarded those standards of procedure which are so precious and so important for our society." (Emphasis added.)

The case before us was foreseen by the distinguished Committee[18] on the Bill of Rights of the American Bar Association, which submitted on May 15, 1944, to the Committee on the Judiciary of the House of Representatives of the Congress a memorandum in which the Committee said:

"*A person accused of crime needs a lawyer right after his arrest probably more than at any other time.* Yet he very often does not have a lawyer until many days later * * *the constitutional right to counsel becomes meaningless when the prisoner cannot afford to hire a lawyer to give him the help which he needs* before appearing in the commissioner's office. The existing rules as to the assignment of counsel by the court and the payment of counsel out of public funds are inadequate to provide the legal protection and advice which arrested persons need. Also it is not enough to assign counsel for the trial; a definite procedure is needed for assuring the prisoner a lawyer soon after his arrest * * *.

" * * * unlawful and secret detention takes away the right of the accused 'to have the assistance of counsel for his defense', which is guaranteed by the Sixth Amendment." Investigation is made easier if the prisoner is hidden away from lawyers who might advise him of his rights with respect to interrogations and confessions or obtain his immediate committal by *habeas corpus.* Yet the Supreme Court, through Mr. Justice Sutherland and Mr. Justice Black, has twice declared that a prisoner 'requires the guiding hand of counsel *in every step* in the proceedings against him.'* *Thus the constitutional right is not limited to legal representa-*

17. 1951, 343 U.S. 1, 23, 72 S.Ct. 451, 462, 96 L.Ed. 717.

18. Committee: Burton W. Musser, Chairman, Salt Lake City, Utah, Douglas Arant, Birmingham, Ala., Zechariah Chafee, Jr., Cambridge, Mass., J. A. Gooch, Fort Worth, Texas, George I. Haight, Chicago, Ill., H. Austin Hauxhurst, Cleveland, Ohio, Monte M. Lemann,

New Orleans, La., W. E. Morse, Jackson, Miss., Frank B. Ober, Baltimore, Md., Basil O'Connor, New York, N. Y., Maurice Bower Saul, Philadelphia, Pa., John McI. Smith, Harrisburg, Pa., Lynn U. Stambaugh, Fargo, N. D., Lloyd Wright, Los Angeles, Calif.

* Powell v. State of Alabama, 1932, 287 U. S. 45, 69, 53 S.Ct. 55, 77 L.Ed. 158;

*tion during the trial.* From the moment of his arrest the prisoner needs legal help to procure his discharge if the evidence against him is insufficient, to advise him about his statement during preliminary examination before the magistrate, to arrange for bail, and to protect him from abuses during confinement. Nevertheless, the practice of keeping a prisoner segregated from the outside world has become sufficiently frequent to bring into common use in American police circles the word *incommunicado.* (Emphasis added)

'The use of a foreign phrase for which there is no exact English equivalent indicates that the practice is regarded as alien to our habits and traditions.' **

"Finally, prolonged unlawful detention tends to impair the right of the accused under the Fifth Amendment not to be 'compelled in any criminal case to be a witness against himself.' It is true that this Amendment has been interpreted not to forbid the questioning of a man in custody who is willing to answer, when the interrogation is conducted without violence or mental suffering. Still, it is obvious that the line between proper and improper questioning may easily be passed. Nothing but the conscience of the officers protects a prisoner from milder or drastic forms of the third degree so long as he is in their uncontrolled custody, removed from systematic prison regulations and isolated from the outside world." [19]

These views have further distinguished support in the following references:

Johnson v. Zerbst, 1938, 304 U.S. 458, 463, 58 S.Ct. 1019, 82 L.Ed. 1461. (italics supplied)

** Wickersham Report No. 11, page 37.

19. See Appendix D.

"Although competent counsel is of great value at that time (time of the trial), *the time when an accused person really needs the help of a lawyer is when he is first arrested and from then on until trial. The intervening period is so full of hazards for the accused person that he may have lost any legitimate defense long before he is arraigned and put on trial.*" Miller, J., "Lawyers and the Administration of Criminal Justice" (1934) 20 A.B. A.J. 77, 78.

"*Those who think of the accused as one at an unfair disadvantage with all the powers of the state arrayed against him * * * if they think intelligently and not merely as emotional romanticists * * * think of that half-concealed, unsupervised procedure which precedes the appearance of the accused in the court of record. Here it is that we find the third degree, the bail bond broker, the stool pigeon, the crooked interpreter, the shyster lawyer, the lameduck magistrate, and all the rest of the motley of underworld characters and methods. The poor man * * * often is the victim of a grotesque burlesque on the administration of justice.*" Miller, J., quoted in Moley, Our Criminal Courts (1930) 67–68.[20]

*There was no understanding, intelligent or competent waiver of counsel on any of the occasions at any time during the proceedings between arrest and trial.*

One cannot escape the conviction that these defendants were not advised adequately of their constitutional rights. One cannot escape the conviction that these defendants did not act understandingly, intelligently or competently in making their admissions and confessions

20. Orfield, Criminal Procedure from Arrest to Appeal, Judicial Administration Series, New York Univ. Press. See Appendix D. (Emphasis added)

or in the proceedings at the preliminary hearing or in entering the pleas at the arraignment.

■ It is clear under all of the authorities that there could have been no intelligent waiver without an explanation to the defendants of the facts and their legal consequences sufficient to give defendants a broad understanding of the whole matter. There was no sufficient statement of these matters at any time.

■ The right to counsel at the arraignment and at the time they entered their pleas was not understandingly, intelligently or competently waived.[21] Defendants were not informed by the court that their plea would waive the errors in the prior proceedings arising out of a denial of their right to counsel, arising out of self incrimination in the absence of counsel,[22] or arising out of any other defect or irregularity in the earlier proceedings. This should have been made clear to the defendants before they decided whether or not to enter their pleas. Defendants were young and inexperienced in the intricacies of criminal procedure when they pleaded. The record shows no attempt on the part of the court to enable them to understand the consequences of their pleas without advice of counsel. Only when the accused refuses counsel with an understanding of his rights can the court dispense with counsel.[23] And, as we have seen, defendants had demanded counsel time and time again.

Can anyone suppose that these defendants would have entered their pleas without advice of counsel if they had been told that their repeated requests for counsel and the errors in the record arising out of the denial of those requests would be waived thereby?

The right to counsel at the preliminary hearing was not understandingly, intelligently or competently waived. And, this is true for the additional reason that at the preliminary hearing the explanation given to the defendants in response to their demand for counsel was erroneous as a matter of law and misleading.[24]

Defendants requested counsel at the beginning of the preliminary hearing.

Defendant Braasch: Can *we* have an attorney *at this time* and *at the trial*? (Transcript of Preliminary Hearing, p. 5).

Pickett, the District Attorney, has just said he has a right to a continuance to get one. But instead of continuing it, Mr. Pickett proceeds to minimize the importance of the preliminary hearing, to a point where petitioners are persuaded to waive counsel, but obviously with no appreciation of the seriousness of the proceedings, and certainly not intelligently.

On its face, the record shows that petitioners were not intelligently waiving counsel, that they were not made aware of the fact they could have the matter postponed to obtain counsel, that it was not made clear that under the Utah Statute they had the right to have counsel procured for them, instead of procuring counsel themselves. Obviously, they did not comprehend the nature of the proceedings, for it was only after all the evidence was in that Braasch once again asked for counsel at the end of the hearing. Now, he seems to realize what has happened, for he says:

Defendant Braasch: At this point, I would like to have an attorney.

---

21. See stipulation as to what transpired at the time of the arraignment, Appendix B; and, see the minute entry of that proceeding, Appendix C.

22. Utah Constitution, Art. I, Sec. 12; 105-1–10, Utah Code Annotated 1943.

23. Uveges v. Commonwealth of Pa., 1948, 335 U.S. 437, 441–442, 69 S.Ct. 184, 93 L.Ed. 127; Bute v. People of State of Ill.,

1948, 333 U.S. 640, 68 S.Ct. 763, 92 L.Ed. 986; Johnson v. Zerbst, 1938, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461; Walker v. Johnston, 1941, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830; Holtzoff, "The Right of Counsel Under the Sixth Amendment" (1944), 20 N.Y.U.L.Q. Rev. 1.

24. See Appendix E. This matter is summarized in defendants' brief.

The Court: You will have a chance to have counsel in the District Court.

Only one conclusion can be drawn from this renewed request for counsel. Petitioner at this point either realized the seriousness of the hearing for the first time, or was misled at the outset as to what his right to counsel was.

In the face of these requests the Justice's Docket then contains this entry, which, to put it mildly, distorts the truth.

"And each of said defendants said he did not desire counsel at said hearing and was informed of * * * " (Transcript of Preliminary Hearing, p. 51).

This entry, on its face, is an afterthought. It is inserted by interlineation. And, it is written in someone's handwriting. It certainly is not a true and correct reflection of what happened as shown by the reporter's transcript.

The District Attorney, in effect, told these boys that the justice of the peace had no right to appoint counsel for them, but that the trial court, if they were bound over, would appoint counsel for them, and that they must proceed unless they had the ability to get counsel for themselves.

 This was in effect a statement to the defendants that they had no right to counsel unless they had the means to employ their own counsel, which is contrary to the Utah law.

If the choice of the defendants was beclouded either by the inadequacy of the explanation or by misleading advice, however honestly offered by the District Attorney or judge, the defendants did not have an intelligent awareness of the consequences of their act.[25]

The crime with which they were charged was committed about 4:00 a. m.

October 22, 1949. The preliminary hearing was held at 3:00 p. m. October 25, 1949, which was 83 hours later. The District Attorney had summoned his own witnesses and prepared his case without advising the defendants they were to face a preliminary hearing and without advising them that they had the right to counsel at that hearing if they desired.

The judge before whom Braasch and Sullivan were arraigned without counsel, in a concurring opinion on the appeal to the Supreme Court of Utah, 229 P.2d 289, 295, from the conviction of Braasch and Sullivan said:

"The prevailing opinion correctly indicates that the right to have the assistance of counsel at every stage of the proceedings includes the right to counsel at the arraignment at the preliminary hearing and at all subsequent proceedings. At the preliminary hearing, the defendants requested an attorney and did not get one. When they were told they could have one but had to pay for it, they said no more about the matter and apparently acquiesced in going forward without the benefit of counsel. Whether they actually waived their rights to counsel or not may be open to dispute. If not, it was in violation of their right to proceed without providing them with an attorney. * * * "

The justice himself says: "Whether they actually waived their rights to counsel or not (at the preliminary hearing) may be open to dispute".

It is difficult to understand how there could be any dispute about it in view of the Utah Supreme Court's view that what the state district attorney told the defendants at the preliminary hearing was both wrong and inadequate. More-

25. Von Moltke v. Gillies, 1948, 332 U.S. 708, 729, 68 S.Ct. 316, 326, 92 L.Ed. 309, where Mr. Justice Frankfurter said: "There must be both the capacity to make an understanding choice and an absence of subverting factors so that the choice is clearly free and responsible. If the choice is beclouded, whether by duress or by misleading advice, however honestly offered by a member of the prosecution, a plea of guilty accepted without more than what this record discloses can hardly be called a refusal to put the inner feeling of innocence to the fair test of the law with intelligent awareness of consequences."

over, though defendants requested counsel the District Attorney and magistrate in violation of the Utah Statute failed to continue the hearing to enable defendants to obtain counsel.

A greater vice, if possible, exists in the failure to provide counsel at the arraignment. This is true because the defendants were not told that by entering their pleas they waived errors and irregularities in all the prior proceedings. By entering their pleas, the state now contends these defendants waived the error at the preliminary hearing of the denial to them of the right to counsel. Yet they were not told this consequence would follow.

 It cannot be contended that defendants waived their right to counsel unless there was an understanding and intentional relinquishment of that right. Nor is it waived unless defendants had a broad understanding of the whole matter, including at least knowledge of the nature and extent of the right and of the consequences of the act of waiver.[26]

 Courts indulge every reasonable presumption against waiver of fundamental constitutional rights and do not presume acquiescence in the loss of such rights.[27]

Mr. Justice Murphy states the view of the court in Glasser v. United States: [28]

"To preserve the protection of the Bill of Rights for hard-pressed defendants, we indulge every reasonable presumption against the waiver of fundamental rights."

In Von Moltke v. Gillies [332 U.S. 708, 68 S.Ct. 323], supra, Mr. Justice Black said:

"* * * in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. * * * To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter."

The Supreme Court of Utah disposed of this case on the appeal from the conviction upon the ground that the deprivation of the constitutionally guaranteed right to counsel was immaterial because not prejudicial to the defendants.[29]

Mr. Justice Murphy answered this argument in Glasser v. United States, 1942, 315 U.S. 60, 75–76, 62 S.Ct. 457, 467, 86 L.Ed. 680.

"To determine the precise degree of prejudice * * * is * * * difficult and unnecessary. The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial."

And, Mr. Justice Douglas, speaking for the Supreme Court, in Williams v. Kaiser, 1945, 323 U.S. 471, 475, 65 S.Ct. 363, 366, 89 L.Ed. 398, also answers it:

"If we assume that petitioner committed a crime, we cannot know the degree of prejudice which the denial of counsel caused. * * *

26. Johnson v. Zerbst, 1938, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461; Walker v. Johnston, 1941, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830; Rice v. Olson, 1945, 324 U.S. 786, 788, 789, 65 S.Ct. 989, 89 L.Ed. 1367; Uvegas v. Com. of Pa., 1948, 335 U.S. 437, 69 S.Ct. 184, 93 L.Ed. 127; Bute v. People of State of Ill., 1948, 333 U.S. 640, 68 S.Ct. 763, 92 L.Ed. 986; Von Moltke v. Gillies, 1948, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309.

27. Mr. Justice Black, speaking for the Supreme Court of the United States in Johnson v. Zerbst, supra, 1938, 304 U.S. 458, at page 464, 58 S.Ct. 1019.

28. Glasser v. U. S., 1942, 315 U.S. 60, 70, 62 S.Ct. 457, 465, 86 L.Ed. 680.

29. See opinions of the Justices Wade and Crockett in State v. Braasch, 1951, 229 P.2d 289.

A layman is usually no match for the skilled prosecutor whom he confronts in the court room. He needs the aid of counsel lest he be the victim of overzealous prosecutors, of the law's complexity, or of his own ignorance or bewilderment."

■ Nothing can be more destructive of our constitutional system than the doctrine that there is no prejudice to the accused who is denied his constitutional right to counsel. Defendant has an absolute right to counsel, not one based upon a retrospective guess whether counsel might or might not have been helpful. Who knows what counsel could have done? Lawyers frequently astonish trial judges—and sometimes their opponents—with their learning, skill and resourcefulness. Defendants here stand in peril of their lives. Who knows in what degree this is due to deprivation of counsel? At the very least, who can say that a jury would not have recommended mercy if procedural standards had been followed? Here the jury made no recommendation, and hence the trial judge had no discretion but to impose the death sentence.

Under Utah law: "Every person guilty of murder in the first degree shall suffer death, or, upon the recommendation of the jury, may be imprisoned at hard labor in the state prison for life, in the discretion of the court". [30]

After defendants were arraigned, lawyers were appointed to conduct the trial. The record is not clear when defendants first saw them. But, from the beginning, and throughout, counsel said there was nothing they could do for defendants. Counsel expressed a strong unwillingness to serve. Sullivan's counsel went further. He wrote the following letter and more than once expressed the ideas of lack of competency and actual disqualification by reason of conflict of interest therein expressed:

"Mrs. Grace E. Agnew
Sheffield Sta.
Kansas City, Mo.

Dear Mrs. Agnew:

"The jailer of Iron County Jail handed me your letter to him of 10 November, 1949 to answer.

"Your son is accused of the crime of Murder in the first degree. He and another fellow are accused of killing a service station attendant in Beaver City, Beaver County, Utah. A small town about 50 miles north of here. They are being held here because there is a great deal of feeling about the matter in Beaver and it is felt that the accused men would be safer here while awaiting trial.

"Inasmuch as your son stated that he had no funds to hire an attorney I was assigned to defend him by Judge Crockett. I informed the judge that I had done some work for the family the dead boy belongs to and that I knew the dead boy very well. Judge Crockett felt that that was not grounds for assigning another attorney. This information has been communicated to Mr. Sullivan and he does not seem to feel disposed to ask for another attorney. Attorney Orville Isom of this city has been assigned to defend the Braasch boy, Mr. Sullivan's friend, and the other fellow accused of this crime.

"Indications are that they will be tried for 1st degree murder in Beaver, Utah on 9 December, 1949.

"The best thing that you can do for this boy is get him an attorney that is a criminal specialist. I am a general practicioner (sic) and have 20 months experience in the practice of law. I have never been involved in a murder and feel somewhat inadequate to the assignment. Also, inasmuch as I knew the Man-

---

30. 1943 Utah Code Annotated, 103-28-4.

zione boy I do not feel proper about the assignment.

"Sincerely yours,
"/s/ Patrick H. Fenton
"Patrick H. Fenton"

Both counsel wrote the governor of the state between conviction and appeal. Sullivan's counsel says in his letter to the governor:

"I was informed of the appointment by Judge Crockett and asked to be released inasmuch as I knew the Manzione boy very well and had previously represented Mr. Joseph A. Manzione, the father of the murdered boy.

"Even though I have initiated, in conjunction with Mr. Isom, an appeal on this matter I do not believe that there is material error in the matter.

"I may be wrong but I feel that Sullivan's family are blaming me for loosing (sic) the jury verdict in a matter that in my opinion was more vicious than any killing I witnessed during World War II as an Artillery Observer during 10 months of combat with the Third Army in Europe."

Braasch's counsel says in his letter to the governor:

"Judge Hoyt called me this morning and said you had called him to the effect that some of Sullivan's relatives had called on you regarding the appeal and at least intimated that they would like some one else to handle the appeal. This probably stems from the fact that they feel that neither Mr. Fenton or I are too confident about the results of an appeal. We have told both Braasch and Sullivan on several occasions that there is very little on which to appeal and we doubt that the Supreme Court can do anything else but affirm the lower Court's decision."

Sullivan's counsel was admitted to practice January 12, 1948, and had been in the practice 20 months at the time in question. Braasch's counsel's practice was a general civil practice except for a few indigent defendants assigned to him by the court.

Counsel, on the morning of the trial, informed defendants that since there had been a complete re-enactment of the crime there was very little they could do. Defendants had been taken from the preliminary hearing directly to the scene of the crime to perform the re-enactment. Twice defendants demanded counsel at the hearing and twice they were denied counsel. They were told, "You will have a chance to have counsel in the district court." With this statement they were taken out to re-enact the crime.

In the sparsely settled community of Beaver, Utah, population about 1,674, where the crime occurred, the defendants were displayed and identified as the killers before irate townspeople, many of whom were armed in preparation for the annual deer hunt. As defendants were taken from the court house after the preliminary hearing, evidence of intense hostility against defendants caused them to fear that someone in the crowd might shoot them down. And so, misled as to their right to counsel, bewildered and in fear of their lives, defendants were taken to the scene of the killing where the prosecution induced them to enact the crime before the public.

The trial was held in Parowan, population 1455, an adjacent small town, about 30 miles to the south of Beaver. There are many community and family ties between these two towns.

Though the matter of venue is not reviewable here, it is a circumstance which cannot be overlooked in this record. It should have been unthinkable under the circumstances of this case to hold the trial at either Beaver or Parowan. There was no real difference between them.

 The court has made an examination of the whole course of the proceedings in this case in accordance with the views of the Supreme Court of the

United States expressed by Mr. Justice Frankfurter:[31]

"Judicial review of that guaranty of the Fourteenth Amendment inescapably imposes upon this Court an exercise of judgment upon the whole course of the proceedings in order to ascertain whether they offend those canons of decency and fairness which express the notions of justice of English-speaking peoples even toward those charged with the most heinous offenses."

And such examination of the whole course of the proceedings discloses that this conviction resulted from too many violations of the constitution and statutes of Utah to satisfy our standard of due process of law.

Experienced convicts in the circumstances of this case would have known how to take care of themselves and to obtain counsel. As this court said in 107 F.Supp. 514, 517, "To refuse Petitioners relief under these circumstances is to put a penalty upon poverty, upon ignorance, upon immaturity and inexperience."

And it is the conclusion of the court that the writ must be granted, for the reasons, Mr. Justice Murphy so eloquently stated: [32]

"When the life of a man hangs in the balance, we should insist upon the fullest measure of due process. Society is here attempting to take away the life or liberty of one of its members. That attempt must be tested by the highest standards of justice and fairness that we know. It is no excuse that the individual is willing to forego certain basic rights unless we are certain that he has a full and intelligent comprehension of what he is doing. Otherwise we take from due process of law a substantial part of its content."

The writ of habeas corpus is granted. The motion of the Attorney General of the State of Utah to dismiss order to show cause and to quash and deny writ of habeas corpus is denied. The provisions of Title 28, Sec. 2243, give the court power to "dispose of the matter as law and justice require". The writ may, therefore, be granted upon terms. Accordingly, the Warden of the prison is directed to keep the defendants in custody to enable the State of Utah to obtain a review of the judgment in the higher federal courts. Counsel for defendants are directed to prepare findings of fact, conclusions of law, and judgment in conformity with this opinion.

### Appendix A

The learned author [1] of "Criminal Procedure from Arrest to Appeal", Judicial Administration Series, at page 425 says:

"The entering of a plea is one of the most critical stages in the proceedings".

In view of the following provisions of the Utah Statutes it is clearly most critical.

Section 105–16–2, Utah Code Annotated 1943, provides:

"No defect or irregularity in or want or absence of any proceeding or statutory requirement, prior to the filing of an information or indictment, including the preliminary hearing, shall constitute prejudicial error and the defendant shall be conclusively presumed to have waived any such defect, irregularity, want or absence of proceeding or statutory requirement, unless he shall before pleading to the information or indictment specifically and expressly object to the information or indictment on such ground. * * *"

Section 105–22–12, Utah Code Annotated 1943, provides:

---

31. Malinski v. People of State of N. Y., 1945, 324 U.S. 401, 416, 65 S.Ct. 781, 788, 89 L.Ed. 1029.

32. Carter v. People of State of Illinois, 1946, 329 U.S. 173, 186, 67 S.Ct. 216, 224, 91 L.Ed. 172.

1. Professor Orfield.

"If the defendant appears for arraignment without counsel, he must be informed by the court that it is his right to have counsel before being arraigned, and must be asked whether he desires the aid of counsel. If he desires, but is unable to employ, counsel, the court must assign counsel to defend him."

Section 105–22–18, Utah Code Annotated 1943, provides:

"Neither a failure to arraign nor an irregularity in the arraignment shall effect the validity of any proceedings in the cause if the defendant pleads to the indictment or information and/or proceeds to trial without specifically and expressly objecting to such failure or irregularity."

Section 105–23–10, Utah Code Annotated 1943, provides:

"If the defendant does not move to quash the information or indictment before or at the time he pleads thereto he shall be taken to have waived all objections which are grounds for a motion to quash except those which are also grounds for a motion in arrest of judgment."

### Appendix B

United States District Court, District of Utah Central Division

In the Matter of the Application of Melvin Leroy Sullivan and Verne Alfred Braasch, for a writ of habeas corpus.

Stipulation No. C–21–52

The parties hereto stipulate that the following may be offered to the Court as an agreed statement of facts and that the same may supplement the existing records to show what took place at the time of arraignment of Melvin LeRoy Sullivan and Verne Alfred Braasch on a charge of murder in the First Degree on October 29, 1949, at Beaver, Utah:

1. Melvin LeRoy Sullivan and Verne Alfred Braasch were presented to the Court on that day, having been bound over to the District Court after preliminary hearing on a charge of murder. Judge J. Allan Crockett, then a Judge of the Third Judicial District of Utah, presided.

2. After the Court had been advised by the District Attorney that the defendants were ready to be arraigned, the Court was advised that they were not then represented by counsel. No counsel had been appointed and none was present in Court.

3. Pleas of "not guilty" to the charge were entered by each defendant upon the understanding that attorneys Orville Isom and Patrick Fenton of Cedar City would agree to accept appointment as counsel for said defendants.

4. The Court thereupon appointed of record Orville Isom as attorney for Verne Alfred Braasch and Patrick Fenton as attorney for Melvin LeRoy Sullivan. Neither attorney was present at the arraignment, nor did they advise with the defendants prior to entering their pleas. Dated this 16 day of October, 1954.

/s/ A. W. Sandack E. R. Callister

A. W. Sandack Attorney General

/s/ J. Allan Moll /s/ Ken Chamberlain

J. Allan Moll Ken Chamberlain
 Assistant Attorney General

/s/ Reed W. Nielson

Reed W. Nielson

Attorneys for Melvin LeRoy Sullivan and Verne Alfred Braasch.

### Appendix C

In the District Court of the Fifth Judicial District in and for the County of Beaver, State of Utah

Saturday, October 29, 1949

Present were the following officers:

| | |
|---|---|
| J. Allan Crockett | Judge |
| Joyce Richardson | Court Reporter |
| C. Victor Smith | Clerk |
| Jasper Puffer | Sheriff |

Criminal #336
State of Utah
 vs
Verne Alfred Braasch and
Melvin LeRoy Sullivan

This case came on for arraignment on the information of Verne Alfred Braasch and Melvin LeRoy Sullivan, issued out of the District Attorney's office of the Fifth Judicial District of Utah, charging the defendants with committing a Felony, to-wit: Murder in the first degree. Ellis J. Pickett, District Attorney, and Geo. C. Miller, Beaver County Attorney, appeared for the State of Utah. The defendants appeared in person. The Court asked each defendant if his true name is as appears in the information and each defendant answered "yes". The defendants were advised by the court of their rights to counsel. Each defendant indicated that he would be arraigned and enter his plea at this time and that he desired that the Court thereafter appoint counsel for him. Thereupon, at the request of the defendants, and each of them, the defendants were read the information and served with a true copy thereof. The Court then asked each of the defendants if he wanted time in which to plead or to plead at this time. Each of said defendants thereupon entered his plea of "Not Guilty". Counsel for the defendants were then appointed by the court as follows: Orville Isom, Attorney for Verne Alfred Braasch; and Patrick Fenton, Attorney for Melvin LeRoy Sullivan. Thereupon trial of this case was tentatively set for December 8, 1949, and the defendants were remanded to the custody of the Sheriff of Beaver County. (and other cases not herein set forth)

Approved: ———— /s/ C. Victor Smith
Judge Clerk

### Appendix D

"Rule 39 of the American Law Institute Code provides that the magistrate shall inform the defendant of his right to the aid of counsel during the preliminary examination.[1] Rule 5(b) of the Federal Rules of Criminal Procedure, provides that the commissioner shall inform the defendant of his right to counsel and shall allow him reasonable time and opportunity to consult counsel.[2] If the preliminary examination is to serve all its purposes in full, it would seem that the defendant should have the right to procure counsel and to be advised of such right, even though there is no provision for the assignment of counsel as is the usual practice in the trial court." [3]

"A basic question in connection with the law of arrest is whether or not the accused should have the right to counsel. Obviously he is to have no such right preceding or during the arrest. But it would seem that to protect him fully he should have the right immediately subsequent to the arrest. With respect to persons accused for the first time, the Danish law so provides. 'The accused should therefore always be assisted by a legal advisor and if he cannot afford the fees himself, counsel should be appointed and fully paid for by the Crown—otherwise it is not to be expected that his services would be very effective. And this appointment of counsel for the defense by the Crown is especially necessary immediately a suspect is arrested, since the very fact that a person is detained will usually prevent him from securing the services of anyone himself." [4]

### Appendix E

### Denial of Counsel.

1. *Petitioners are deprived the aid of counsel* (Transcript of Preliminary Hearing, pp. 2, 3)

1. Rule 41 provides that the magistrate shall allow the defendant a reasonable time to send for counsel and shall, if necessary, postpone the examination for that purpose. For a proposal to extend this right to nonindictable offenses summarily triable, see Report of New York Law Revision Commission for 1940 (1940) 91–104.

2. See Schwellenbach, J., "Information vs. Intuition in the Imposition of Sentence" (1943) 27 J.Am.Jud.Soc. 52, 54.

3. Orfield, Criminal Procedure from Arrest to Appeal, Judicial Administration Series, p. 79.

4. Orfield, Criminal Procedure from Arrest to Appeal, Judicial Administration Series, pp. 43–44.

"Mr. Pickett (District Attorney): Your Honor, may I at this time advise these men of their constitutional rights under the laws of the State of Utah?

"The Court: Yes.

"Mr. Pickett: That they have a right to a speedy trial. That you have a right to be represented by counsel, an attorney, at all stages of the proceedings; that you have a right to a preliminary hearing at this time, or you may ask for a continuance so that you can get an attorney. What is your wish?

"Defendant Braasch: *Can we have an attorney at this time and at the trial?*

"Mr. Pickett: The Justice of the Peace at the preliminary hearing doesn't have the right to appoint counsel. If the Justice of the Peace binds you over to the District Court, the court will appoint counsel for you. The Court at this point doesn't have the right to do that. You have the right to employ counsel for yourselves. This is a preliminary hearing to determine whether or not a crime has been committed, and if so whether or not there is probable cause to hold you boys for that crime. Now, that is the purpose of this action. Do you waive time for preliminary hearing to be held at a later date?

"The Defendant: Just as soon have it now and have it over with.

"Mr. Pickett: Is that what you wish, Mr. Sullivan?

"Defendant Sullivan: Yes.

"Mr. Pickett: May the record show the defendants waive time for preliminary hearing at this time and consent to a preliminary hearing now?

"The Defendant: We just as soon get it over with.

"Mr. Pickett: You waive time to get counsel, or further time?

"The Defendant: Yes.

"Mr. Pickett: Your name is pronounced Braasch?

"The Defendant: Braasch, yes.

"Mr. Pickett: Is that your desire, Mr. Sullivan?

"The Defendant Sullivan: Yes.

"Mr. Pickett: Pardon me?

"The Defendant Sullivan: Yes.

"Mr. Pickett: May we proceed, your Honor?

"The Court: With the witnesses?

"Mr. Pickett: Yes.

"The Court: Yes."

*2. Confessions are introduced* (Transcript of Preliminary Hearing, p. 26)

"Mr. Pickett: Your Honor, we offer plaintiff's Exhibit 1 and plaintiff's Exhibit 2 as evidence. If they are acceptable then the order would be made to receive them.

"The Court: They will be received.

"Mr. Pickett: May the record show plaintiff's Exhibit 1 and plaintiff's Exhibit 2 have been received?

"The Court: Yes."

*3. Petitioners again request aid of counsel at preliminary hearing* (Transcript of Preliminary Hearing, p. 44)

"Mr. Pickett: I think that is all, Your Honor, that is all the State has.

"The law provides, your Honor, that if the defendants or either of them, wish to make any statements they may do so without being sworn. They may make some Statement now, if they desire to do so.

"The Court: You are not required to make a statement, or you can if you choose.

"The Defendant Braasch: *At this point I would like to have an attorney.*

"The Court: *You will have a chance to have counsel in the District Court. Is that all you have to say?*

"The Defendant Braasch: Yes.

"The Court: You will be held for hearing in the District Court without bond."

4. *Committing Magistrate's Order fails to set forth petitioners' request for aid of counsel.* (Transcript of Preliminary Hearing, p. 51)

"And each of said defendants said he did not desire counsel at said hearing and was informed of * *" (This entry appears in the record of the preliminary hearing as a handwritten interlineation into the Order of the Committing Magistrate.)

See also, D.C., 126 F.Supp. 586.