**STATE of UTAH, Appellant,**

v.

**Melvin LeRoy SULLIVAN and Verne Alfred Braasch, Appellees.**

**No. 5128.**

United States Court of Appeals
Tenth Circuit.

Oct. 27, 1955.

Writ of Certiorari Denied
Feb. 27, 1956.

See 76 S.Ct. 449.

512

E. R. Callister, Atty. Gen., and Walter L. Budge, Asst. Atty. Gen. (Ken Chamberlain, Sp. Asst. Atty. Gen., was with them on the brief), for appellants.

A. W. Sandack, Salt Lake City, Utah (Reid W. Nelson, Salt Lake City, Utah, was with him on the brief), for appellees.

Before PHILLIPS, Chief Judge, and BRATTON and HUXMAN, Circuit Judges.

BRATTON, Circuit Judge.

Verne Alfred Braasch and Melvin LeRoy Sullivan were tried in the state court of Utah upon a charge of murder. They were found guilty and sentenced to death. The judgment was affirmed, State of Utah v. Braasch, 119 Utah 450, 229 P.2d 289; and certiorari was denied 342 U.S. 910, 72 S.Ct. 304, 96 L.Ed. 681. Thereafter, they filed in the Supreme Court of Utah a pleading in which they sought a writ of habeas corpus. Without opinion, an order was entered disallowing the writ. On the next ensuing day, Sullivan and Braasch instituted in the United States Court for Utah this proceeding in habeas corpus. It was charged in the complaint for the writ that the detention of petitioners for execution was illegal and void because their rights under the Constitution of the United States had been violated. An amended complaint was subsequently filed. A motion was lodged to dismiss the proceeding for the reason that the amended complaint contained grounds of attack upon the judgment of the state court which had not been submitted to the state courts of Utah. The motion was taken under advisement and evidence was submitted. The court determined that certain grounds of attack then being leveled at the judgment of the state court had not been submitted to the state courts and that the submission of such issues to the state courts was an essential preliminary to the right of resort to habeas corpus in the United States Court. Instead of dismissing the proceeding, the court retained jurisdiction thereof and gave petitioners time within which to institute in the state court an appropriate proceeding for the determination of such issues, Ex parte Sullivan, D.C., 107 F. Supp. 514. A proceeding in habeas corpus was then filed in the Supreme Court of Utah. The application for the writ was denied, 253 P.2d 378; and certiorari was denied Braasch v. State of Utah, 346 U.S. 861, 74 S.Ct. 75, 98 L.Ed. 373. Thereafter the trial court granted the writ in this proceeding, Application of Sullivan, D.C., 126 F.Supp. 564; and the state appealed.

The trial court predicated its action in granting the writ upon multiple grounds, considered in their aggregate. One ground was the failure to furnish petitioners the assistance of counsel at the preliminary hearing in the state court. Petitioners were seasonably taken before a committing magistrate for a preliminary hearing. In the early part of the hearing and again near its conclusion, one of the petitioners—speaking for both of them—stated that they desired counsel. In response, petitioners were told in substance that there was no provision for the furnishing of counsel at the preliminary hearing but that counsel would be furnished them in the district court. The failure to furnish counsel for one charged in the state court with a capital offense constitutes the denial of due process guaranteed by the Fourteenth Amendment to the Constitution of the United States. Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158; Hawk v. Olson, 326 U.S. 271, 66 S.Ct. 116, 90 L.Ed. 61. But the right guaranteed by the constitutional amendment does not accrue until an indictment is returned or an information or other like charge is lodged against the accused. Counselman v. Hitchcock, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110; Hawk v. Olson, supra; Gilmore v. United States, 10 Cir., 129 F.2d 199, certiorari denied 317 U.S. 631, 63 S.Ct. 55, 87 L.Ed. 509. The constitutional provision contains no express or implied command that an accused shall be furnished counsel at the preliminary hearing. Moreover, petitioners did not enter pleas of guilty at the preliminary hearing, did not make confessions, did not testify, and did not say anything of an incriminating nature. And in such circumstances, the failure to furnish them counsel at such hearing did not abridge their fundamental rights which rendered fatally infirm their conviction and sentence. Council v. Clemmer, 85 U.S.App.D.C. 74, 177 F.2d 22, certiorari

**514**

denied 338 U.S. 880, 70 S.Ct. 150, 94 L.Ed. 540.

■■ Another ground upon which the trial court predicated in part ·its granting of the writ was that the law of Utah required the furnishing of counsel at the preliminary hearing. On appeal of the criminal case, the Supreme Court of Utah determined in effect that under certain constitutional and statutory provisions of the state, counsel should have been furnished petitioners at the preliminary hearing but that under the circumstances the failure to furnish counsel did not constitute prejudicial error. That adjudication is conclusive in this proceeding in respect to the constitutional and statutory exactions of the state. Moreover, the jurisdiction of the trial court in this proceeding in habeas corpus was limited to the determination of questions relating to the denial of rights under the Constitution of the United States. It did not extend to the adjudication of non-federal questions of state law. In any event, even though the trial court had been clothed with jurisdiction to determine that the failure to furnish petitioners counsel at the preliminary hearing violated the requirements of the constitution and statutes of Utah, since petitioners did not enter plea of guilty at such hearing, did not make confessions, did not testify, and did not make any incriminating statements, the failure to furnish them counsel did not constitute any prejudicial abridgement of their rights under state law which rendered void their conviction and sentence in the district court.

■■ The trial court rested in part the granting of its writ upon the failure to furnish petitioners counsel at the time of their arraignment upon the criminal charge. Petitioners did not have counsel at the time they were arraigned and entered their pleas of not guilty in the district court. But immediately thereafter, separate counsel were appointed for them, respectively. At no time after the appointment of counsel was any effort made to withdraw such pleas in order to attack the charge, or for any other purpose. And there is a complete failure of any showing that at any juncture of the criminal case were the petitioners denied any substantive or procedural right which might have been available to them except for such pleas. Petitioners did not suffer any proscription or disadvantage at any point in the criminal case arising out of their pleas of not guilty, entered without the aid of counsel. And, while it is the general rule frequently reiterated that an accused is entitled to the benefit of counsel at every step of the proceeding, where one enters a plea of not guilty and is immediately thereafter furnished counsel for the preparation for trial, for the trial itself, and for the post-trial proceedings, the sentence imposed is not void for violating due process under the Fourteenth Amendment or for impingement of fundamental rights. Council v. Clemmer, supra.

■ Another ground of attack which the trial court took into consideration in granting the writ was that the petitioners did not have the assistance of counsel at the time they made confessions which were introduced in evidence on the trial of the criminal case. When the confessions were offered in evidence on the trial of the criminal case, the court excluded the jury and took evidence and concluded therefrom that the confessions were voluntarily made. The same evidence was submitted to the jury with an instruction that the confessions were not to be considered if they were obtained · through coercion, threats, duress, or any promise of immunity or benefit. The petitioners did not have the benefit of counsel at the time the confessions were made. But on the trial of a criminal case in a state court the introduction in evidence of a free and voluntary confession made while uncounseled does not create an infirmity under the Fourteenth Amendment which empowers a United States Court to issue its writ of habeas corpus restraining execution of the judgment

of the state court. Stein v. People of State of New York, 346 U.S. 156, 73 S.Ct. 1077, 97 L.Ed. 1522.

A further ground upon which the trial court rested in part its granting of the writ was that through self-incrimination, self-identification, and required re-enactment of the crime, petitioners suffered infringement of their fundamental rights to due process under the Fourteenth Amendment. In its consideration of the criminal case on appeal, and in its consideration of the proceeding in habeas corpus, the Supreme Court of Utah determined otherwise. That determination is entitled to due consideration but it is not conclusive in this proceeding. Cranor v. Gonzales, 9 Cir., 226 F.2d 83. It therefore becomes necessary to review the facts shown by the record in this proceeding. At the time of the commission of the crime of murder with which they were charged, petitioners were 19 and 21 years of age, respectively. They were seemingly of average intelligence but of limited education. They lived in states other than Utah, were without friends in Utah, and had only a small amount of money. On the next day after the commission of the crime, they were taken into custody in Las Vegas, Nevada. That occurred early in the morning. Shortly after being detained, one of the petitioners inquired whether their detention had anything to do with the robbery of the service station attendant in Utah. They were placed in jail, and about two hours later a detective on the police force began interrogating them. They were advised of their legal rights and no physical or psychological coercion was used. Within a short time after the interrogation began, one of the petitioners stated that he wanted to consult an attorney. In reply, he was told that he could employ an attorney but that the officers could not furnish him one. In the course of the interrogation of one of the petitioners, the detective stated to him that he had a statement from the other petitioner. That statement was untrue. The detective did not then have a statement from the other petitioner. The interrogation continued, and within three hours or thereabouts both petitioners made oral confessions. Late that afternoon, officers from Utah, accompanied by a special agent of the oil company in whose filling station the murder took place, arrived in Las Vegas. During the intervening time, the petitioners were in jail and were not interrogated or maltreated. Petitioners were brought singly and separately into a room where the officers from Utah, the officers of the city of Las Vegas, and the special agent, were assembled. The detective to whom the oral confessions had been made again advised the petitioners of their legal rights and inquired whether they were willing to give written confessions. At some point, the petitioner who had requested an attorney that morning again said that he would like to consult an attorney. In reply, he was told that it was not within the power of the officers to furnish him counsel. Thereafter, petitioners with little or no hesitation agreed to make written confessions, and they were made. On the way back to Utah by automobile, the officers, the special agent, and the petitioners discussed the crime. At the conclusion of the preliminary hearing, and after the petitioners and the officers left the courtroom, petitioners were asked whether they were willing to go to the filling station and re-enact the crime. They were told that it must be voluntary. They assented, and at the filling station they participated in the re-enactment of the crime. Following the re-enactment of the crime, the officers and the petitioners went to a nearby cafe. And while there, two waitresses in the cafe recognized the petitioners as being the persons who were in the cafe sometime during the night on which the crime was committed. Later the waitresses were taken to the jail and identified the petitioners as having been in the cafe on the night of the commission of the crime. While the petitioners were in jail awaiting trial, the officers exhibited to them

two guns which had been found near the town where the crime of murder occurred; and the petitioners identified the guns as the ones which had been used in taking the life of the attendant at the filling station. Petitioners testified in substance that they were told by a deputy sheriff that the feeling against them was very high; that they feared for their lives from the time of their return to Utah; that they saw guns in automobiles on the streets on the day of the preliminary hearing; that they saw armed men in the courtroom at the time of the preliminary hearing; that on coming out of the courtroom at the conclusion of the preliminary hearing, the officers stepped to one side in order to avoid being behind the petitioners; that later one of the officers told petitioners that at the time the officers stepped to one side he thought there would be some shooting; and that when asked if they were willing to go to the filling station and re-enact the crime, they thought they had no choice concerning the matter. But virtually all of such testimony given by the petitioners was challenged by countervailing evidence. The officers and others testified in composite that during the deer season many persons in that part of the state carry rifles in their automobiles for hunting purposes; that during the deer season many automobiles are seen on the streets of the county seat with rifles in them; that the deer season was open at the time of the preliminary hearing; that the only persons seen in the courtroom bearing arms were two or three officers; that there was no demonstration or untoward incident of any kind before, during, or after the preliminary hearing; that the petitioners willingly re-enacted the crime; that the officers and petitioners went to the cafe for coffee; and that petitioners were not taken there for purpose of identification. There was no self-incrimination, self-identification, or required re-enactment of the crime which constituted a trespass upon the rights of the petitioners under the Fourteenth Amendment or violated their fundamental rights.

One remaining ground on which the court rested in part its granting of the writ calls for brief discussion. That ground was that under all of the circumstances a fair and impartial trial of the criminal case could not be had in Beaver, Utah, or Parowan, Utah. Beaver, a small town of less than 2,000 population, is the county seat of Beaver County. Parawan, likewise a small town, is the county seat of Iron County. Beaver and Iron Counties adjoin. The murder occurred in Beaver. Petitioners filed in the criminal case a motion for change of venue from Beaver County. The ground of the motion was that because of local prejudice, a fair and impartial trial could not be had in that county. The venue was changed to Iron County, and the case was tried at Parowan. Two special jury panels were drawn, and two days were consumed in the selection of the jury at Parowan. But there is no showing in the record that there was wide-spread prejudice against petitioners in Iron County, or that the jury selected was not fair and impartial.

We have examined the record with painstaking care. And we fail to find in it any basis for the conclusion that petitioners suffered violation of their rights to due process under the Fourteenth Amendment or impingement of their fundamental rights which rendered their conviction and sentence in the criminal case open to challenge in this proceeding in habeas corpus.

The judgment is reversed and the cause is remanded with directions to discharge the writ and dismiss the proceeding.